IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

YVONNE R. ALSTON
10012 Cedarhollow Lane
Largo, MD 20774

    Plaintiff,

v.                                                                      Civil Case No. CAL15-25165

BRANCH BANKING AND TRUST COMPANY
Serve: The Corporation Trust Inc.
      351 W. Camden Street
      Baltimore, Maryland 21201

    Defendant,

EQUIFAX INFORMATION SERVICES, LLC
Serve: CSC-Lawyers Incorp Srvc Co.
7 Saint Paul Street, Suite 820
Baltimore, Maryland 21202

    Defendant,

EXPERIAN INFORMATION SOLUTIONS, INC
Serve: The Corporation Trust Incorporated
351 West Camden Street
Baltimore, Maryland 21201

    Defendant,

TRANSUNION, LLC
Serve: CSC-Lawyers Incorp Srvc Co.
7 Saint Paul Street, Suite 820
Baltimore, Maryland 21202

    Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Yvonne R. Alston, (hereafter the "Plaintiff") and for her complaint against the Defendant Branch Banking And Trust Company ("BB&T") alleges as follows:

## PRELIMINARY STATEMENT

1

1. This is an action for a consumer seeking actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 et seq. (Fair Credit Reporting Act or "FCRA").

## PARTIES

2. Plaintiff is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

3. Defendant BB&T a national bank that provides financial services, including mortgage-related services. BB&T originates, purchases and services mortgages. As part of its servicing functions it furnishes information to consumer reporting agencies as contemplated by the FCRA, 15 U.S.C. § 1681-s-2(a-b).

4. Defendant Equifax is a credit reporting agency that operates throughout the United States, including the state of Maryland.

5. Defendant Experian is a credit reporting agency that operates throughout the United States, including the state of Maryland.

6. Defendant Trans Union is a credit reporting agency that operates throughout the United States, including the state of Maryland.

## FACTS

7. Plaintiff obtained a mortgage refinance loan on her primary residence in June 2013.

8. The Lender and/or originator of the loan was Virginia Heritage Bank ("VHB").

9. The Defendant BB&T claims to have acquired the loan from VHB.

10. By letter dated May 31, 2014 Plaintiff requested BB&T provide a payoff statement and a certified copy of the promissory note.

11. On June 4, 2014 BB&T sent correspondence including a payoff statement, transfer of servicing and a copy of the mortgage Note.

12. The mortgage Note was not certified as a true and accurate copy.

13. By letter dated July 15, 2014 Plaintiff advised BB&T that the mortgage Note was not certified as a direct copy of the original note.

14. BB&T did not respond to Plaintiff's letter dated July 15, 2014.

15. By letter dated August 21, 2014 Plaintiff complained that BB&T had yet to provide a certified copy of the Mortgage Note. Plaintiff requested a payoff statement that did not assess interest for the months July thru September 2014.

16. On September 2, 2014 BB&T sent correspondence including a payoff statement, a certified copy of the mortgage Note and a letter dated July 24, 2014. BB&T claimed that the July 24, 2014 letter was sent to Plaintiff in response to her letter dated July 15, 2014.

17. BB&T's July 24, 2014 letter stated a certified copy of the Note was enclosed and apologized for not previously sending the certified Note.

18. The certified Note was payable to Virginia Heritage Bank and unlike the previous uncertified copy of the Note, the certified Note did not have an allonge.

19. The certified Note was not endorsed in blank and it was not endorsed to BB&T.

20. BB&T was not a holder of the certified Note because it was not endorsed to BB&T.

21. By letter dated December 26, 2014 Plaintiff advised BB&T that she has received two different versions of the mortgage Note and requested an opportunity to physically inspect the actual Note. Plaintiff further stated that BB&T should have ceased assessing in interest after July 2014 for BB&T failed to verify that it was the "holder" of the Note. Continuing, the Plaintiff asserted that her monthly payments for July thru December 2014 should have been applied to principal only and requested a payoff statement indicating such.

22. BB&T responded via correspondence dated January 2, 2015 in which it did not address Plaintiff's complaint that interest should not be assessed for July to December 2014.

Rather, BB&T merely provided a payoff statement that included interest for July to December 2014 without any discussion of investigating Plaintiff's inquiry.

23. Plaintiff also sent a dispute letter to Equifax, Experian and Trans Union (collectively, the "credit bureaus") on December 29, 2014. In her dispute letter to the credit bureaus she disputed the balance owed on the mortgage account. Specifically, she stated that the balance should state $129,463.40 but that it incorrectly shows a balance of $131,809.

24. Plaintiff explained in her dispute letter to the credit bureaus that the "cause of the error stems from BB&T's assessment of interest for the months July thru December 2014." Plaintiff further elaborated that "[n]o interest should have been assessed during that period because I attempted to pay off the debt but BB&T failed to provide documentation required for me to complete the pay off." Plaintiff concluded with a request for the credit bureaus to "investigate whether I attempted to pay the debt in full and whether BB&T provided the necessary documentation for me to complete the payoff."

25. Upon information and belief Experian and Trans Union forwarded notice of Plaintiff's dispute to BB&T.

26. Experian responded with its Dispute Results on or about January 15, 2015 in which Experian it stated that the BB&T tradeline was not changed as a result of the processing of Plaintiff's dispute. Upon information and belief none of Experian's employees investigated the merits of Plaintiff's dispute. Experian simply relied on BB&T's conclusions and parroted the results of BB&T's purported investigation.

27. Trans Union responded with its Investigation Results on January 9, 2015 in which it continued to report BB&T mortgage account balance as $131,809. Upon information and belief none of Trans Union's employees investigated the merits of Plaintiff's dispute. Trans Union simply relied on BB&T's conclusions and parroted the results of BB&T's purported investigation.

28. Plaintiff did not receive any results of an investigation from Equifax. Upon information and belief Equifax did not conduct an investigation of Plaintiff's dispute and did not forward notice of the dispute to BB&T for BB&T to investigate the dispute.

29. BB&T received notice of Plaintiff's dispute from Experian and Trans Union but instead of conducting an actual investigation of Plaintiff's dispute, BB&T simply verified that the information being reported was consistent with information that BB&T previously reported.

30. Not only did BB&T fail to investigate Plaintiff's dispute but BB&T did not notate that the account was disputed.

## COUNT ONE: VIOLATIONS OF FCRA
### (as to BB&T)

31. Plaintiff incorporate paragraphs 1-30 by reference.

32. Defendant BB&T violated the FCRA at §1681s-2(b)(1)((E)(i) by failing to modify the account balance after it concluded a reasonable investigation of Plaintiff's dispute.

33. Defendant is in possession of the certified copy of the Note that it sent to Plaintiff. The Note was not indorsed to BB&T so Plaintiff knows that it sent Plaintiff documentation to suggest that BB&T was not a holder of the Note. The certified copy of the Note establishes that the Note was not indorsed to BB&T and BB&T knows that it is not a "holder" of a Note that is payable to VHB.

34. A reasonable investigation by Defendant would have concluded that it had no right to collect payment or at best that Plaintiff had reason not to pay Defendant after receiving a version of the Note that indicates Defendant is not entitled to receive payment. Defendant was required to modify its reporting after it verified the Note was not payable to it or to bearer.

35. Defendant further violated the FCRA when it failed to notate the mortgage account was disputed after receiving Plaintiff's dispute via the credit bureaus.

36. Plaintiff is seeking punitive damages in the amount of $80,000 for Defendant's willful violations of the FCRA under 15 U.S.C. §1681n. Plaintiff is also seeking actual damages in the amount of $10,000 for Defendants' negligent and willful violations of the FCRA under 15 U.S.C. §§1681n & 1681o. Additionally, Plaintiff is entitled to statutory damages of $1,000 for each FCRA violation and his costs for bringing this action. Plaintiff also will seek attorney fees once he retains counsel.

## COUNT TWO: VIOLATIONS OF FCRA
### (as to Equifax, Experian and Transunion)

37. Plaintiff incorporate paragraphs 1-36 by reference.

38. A reasonable investigation of Plaintiff's dispute would have involved the Defendants actually reading the dispute letter and making an individual assessment of the claims made in the dispute letter. Instead, the Defendants simply forwarded the dispute to BB&T for it to investigate and Defendants simply parroted the results of BB&T's investigation results.

39. The Defendants did not inquire as to the quality of investigation that BB&T engaged in to produce its investigation results. If it had the Defendants would have learned that BB&T did not perform an investigation but rather performed a data matching function or verification process. Specifically, BB&T merely verified that the account was being currently reported in a manner consistent with its previous reporting. Such a verification process does not consider the Plaintiff's dispute for it assumes that its previous reporting was accurate notwithstanding the merit of Plaintiff's dispute of that reporting.

40. Defendants make a conscious decision to parrot the furnishers investigation results instead of independently investigating a consumers' dispute. Defendants' motivation to forego investigating a consumer's dispute or to even assess the results of the furnishers investigation and/or results of the investigation, is to save the money it would expend performing reasonable investigations of consumers' disputes.

6

41. Defendants violated 15 U.S.C. §1681i(a)(1),(5)(A) by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and modify the item on Plaintiff's credit file.

42. Defendants violated 15 U.S.C. §1681i(a)(2) by failing to provide the furnisher all relevant information regarding the Plaintiff's dispute.

43. Defendants violated 15 U.S.C. §1681i(a)(2) by failing to review and consider all relevant information submitted by Plaintiff with his disputes.

44. Defendants foregoing violations have caused the Plaintiff to suffer damages including out-of-pocket costs, loss of time, frustration, anger and other emotional or mental stress.

45. Pursuant to 15 U.S.C. §1681n, Defendants willful violation(s) of §1681i(a) render the Defendants liable for statutory and punitive damages, and actual damages for its negligent violation(s), as well as attorney fees and costs, in an amount to be determined by the Court pursuant to §1681n and §1681o.

Respectfully submitted,

Yvonne R. Alston
10012 Cedarhollow Lane
Largo, MD 20774
(301) 350-5780
yvonne_alston@comcast.net