IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| YVONNE R. ALSTON, | * |
| Plaintiff, | * |
| v. | *  Civil Action No.: 15-cv-03100-GJH |
| | (Removed from Circuit Court for Prince |
| BRANCH BANKING AND TRUST | *  George's County, Case No. CAL 15-25165) |
| COMPANY, *et al.*, | |
| | * |
| Defendants. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRANCH BANKING
AND TRUST COMPANY'S MOTION TO DISMISS COUNT I OF COMPLAINT**

Defendant Branch Banking and Trust Company ("BB&T"), by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss Count I of the complaint filed by Yvonne R. Alston. Count I asserts a claim against BB&T for negligently and willfully violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b). Assuming the truth of the allegations in the complaint, Plaintiff has failed to state a claim against BB&T upon which relief can be granted, and Count I should be dismissed with prejudice.

**INTRODUCTION**

Plaintiff Yvonne R. Alston, proceeding *pro se*, is a frequent litigant in this Court[1] with a long history of filing questionable claims as a means to derive a source of income from settlements. This

---

[1] In the last three years, Plaintiff has filed seven other lawsuits alleging some type of violation of the Fair Credit Reporting Act or the Fair Debt Collection Practices Act or both. *Alston v. Hartford Fin. Services, Inc.*, Case No. 12-cv-02270-AW (July 31, 2012 D. Md.) *Alston v. Central Credit Services, Inc.* Case No. 12-cv-02711-DKC (Sept. 11, 2013 D. Md.); *Alston v. Palisades Collection, L.L.C.*, Case No. 13-cv-01012-RWT (Apr. 5, 2013) ; *Alston v. Northstar Location Services, LLC*, Case No. 13-cv-01218 PWG (Apr. 24, 2013); *Alston v. Equifax Info. Services, LLC*, Case No. 13-cv-02388-DKC (Aug. 5, 2013 D. Md); *Alston v. RBS Citizens, N.A.*, Case No. 13-cv-02675-TDC (Sept. 13, 2013 D. Md.) *Alston v. Chase Bank USA, N.A.*, Case No. 14-cv-2987-PWG (Sept. 29, 2014 D. Md.). All of these prior lawsuits appear to have been dismissed as a result of a settlement between the parties.

case represents her latest effort to keep pace with the other members of her family who have similarly filed questionable claims[2] in hopes of leveraging the potential costs of litigation to achieve an early settlement. *See Alston v. Creditors Interchange Receivables Mgmt.*, 2012 U.S. Dist. LEXIS 185736, at *6 (D. Md. Sept. 21, 2012) (Chief Judge Chasanow finding that the Alston family "are engaged in an enterprise of Fair Credit Reporting Act litigation"). Despite Plaintiff's experience as a serial litigant, she has failed to allege sufficient facts to state a claim against BB&T.

According to Count I of the complaint, Plaintiff believes that BB&T willfully and negligently violated the FCRA by not performing a "reasonable investigation" upon receipt of Plaintiff's notice of dispute and by failing to report to the credit bureaus that Plaintiff disputed her loan balance. Both of Plaintiff's claims are legally deficient. Plaintiff's willful violation claim fails because Plaintiff affirmatively alleges that BB&T did some type of investigation after receiving notice of Plaintiff's

---

[2] Plaintiff is the mother of Thomas Alston, Candace Alston and Jonathan Alston, and together, the four of them are responsible for **thirty-eight** separate lawsuits pending in this Court since 2011. Every lawsuit involves claims related to credit reporting or debt collection. *See* fn. 1, *supra*, for Plaintiff's other cases; Thomas Alston's cases include: *Alston v. Equifax Info. Services, LLC*, Case No. 15-cv-03099 TDC (Oct. 13, 2015 D. Md.); *Alston v. Citibank, N.A.*, Case No. 14-cv-03199-DKC (Oct. 10, 2014 D. Md.); *Alston v. RJM Acquisitions LLC*, Case No. 13-cv-01704-RWT (June 12, 2013 D. Md.); *Alston v. ER Solutions, Inc.*, Case No.13-cv-01598-PJM (June 3, 2013 D. Md.); *Alston v. Equifax Information Services, LLC*, Case No. 13-cv-01232-PWG (April 29, 2013 D. Md.); *Alston v. HSBC Card Services, Inc.*, Case No. 13-cv-01226-PWG (April 25, 2013); *Alston v. Wells Fargo Bank, N.A.*, Case No. 12-cv-03745-AW (Dec. 21, 2012 D. Md.); *Alston v. Wells Fargo Bank, N.A.*, Case No. 12-cv-03671-AW (Dec. 14, 2012 D. Md.); *Alston v. Cavalry Portfolio Services, LLC,* Case No. 12-cv-03589-AW (Dec. 7, 2012 D. Md.); *Alston v. ER Solutions, Inc.*, Case No. 12-cv-02542-RWT (Aug. 24, 2012 D. Md.); *Alston v. Professional Account Management, LLC*, Case No. 12-cv-02064-AW (July 11, 2012 D. Md.); *Alston v. Cavalry Portfolio Services, LLC*, Case No. 12-cv-02065-AW (July 11, 2012 D. Md.); *Alston v. Wells Fargo Bank, N.A.*, Case No. 12-cv-02001-JFM (July 5, 2012 D. Md.); *Alston v. Bank of America, N.A.*, Case No. 12-cv-01819-AW (June 20, 2012 D. Md.); *Alston v. NCO Financial Systems, Inc.*, Case No. 12-cv-01708-AW (June 11, 2012 D. Md.); *Alston v. FIA Card Services N.A.*, Case No. 11-cv-03722-JFM (Dec. 22, 2011 D. Md.); *Alston v. Creditors Interchange, Inc.*, Case No. 11-cv-02292-RWT (Aug. 8, 2011 D. Md.). Candace Alston's cases include: *Alston v, First Premier, Inc.*, Case No. 12-cv-02244-PJM (July 30, 2012 D. Md), *Alston v. Monarch Bank*, Case No. 12-cv-01512-JFM (May 21, 2012 D. Md.); *Alston v. HSBC Card Services, Inc.*, Case No. 12-cv-02732-RWT (Sept. 13, 2012 D. Md.); *Alston v. Discover Fin.* Services, Case No. 12-cv-03357-AW (Nov. 15, 2012 D. Md.); *Alston v. Equifax Info. Services, LLC,* Case No. 13-cv-01230-TDC (Apr. 25, 2013 D. Md.); *Alston v. Wells Fargo Home* Mortgage, Case No. 13-cv-03147-TDC (Oct. 23, 2013 D. Md.) *Alston v. Virginia Heritage Bank*, Case No. 14-cv-00656-RWT (Mar. 6, 2014 D. Md.); *Alston v. Transunion, LLC*, Case No. 14-cv-01180-TDC (Apr. 10, 2014 D. Md.); *Alston v. Experian Info. Services, Inc.*, 14-cv-03957-TDC (Dec. 29, 2014 D. Md.); Jonathan Alston's cases include: *Alston v. Transworld Systems, Inc.*, Case No. 12-cv-01815-JFM (June 19, 2012 D. Md.); *Alston v. LHR, Inc.*, Case No. 12-cv-03294-DKC (Nov. 9, 2012 D. Md.); *Alston v. United Collections Bureau, Inc.*, Case No. 13-cv-00913-DKC (Mar. 27, 2013 D. Md.); *Alston v. Equifax Info. Systems, LLC*, Case No.13-cv-02390-DKC (Aug. 15, 2013 D. Md.).

dispute. Although Plaintiff suggests that BB&T's investigation was not reasonable, an investigation was nevertheless performed and that investigation causes Plaintiff's willful violation claim to fail as a matter of law.

Plaintiff's negligent violation claim likewise fails. Other than "seeking actual damages in the amount of $10,000" (Compl., ¶ 36), Plaintiff has not alleged any facts that plausibly suggest that she sustained any actual damages as a result of BB&T's purported conduct. The absence of such factual support is fatal to Plaintiff's negligent violation claim and because the willful violation claim also fails, BB&T is entitled to dismissal of all of Count One, *with prejudice*.[3] There being no other claims asserted against the bank, BB&T should be dismissed from this action altogether.

## FACTUAL BACKGROUND

In June 2013, Plaintiff obtained a mortgage loan secured by a deed of trust on her primary residence. Compl., ¶ 7. The loan, which is memorialized by a promissory note signed by Plaintiff, was originated by Virginia Heritage Bank and subsequently assigned by BB&T. *Id.*, ¶ 8.

On May 31, 2014, Plaintiff requested BB&T to provide a payoff statement along with a "certified copy" of the promissory note. *Id.*, ¶ 10. BB&T responded four days later on June 4, 2014 and provided Plaintiff with the requested payoff statement and a copy of the promissory note, which was not "certified." *Id.*, ¶¶ 11 and 12.

---

[3] While a plaintiff is generally granted leave to amend, at least, once, BB&T urges this Court to dismiss Count I, *with prejudice*. This is not the first time Plaintiff is pursuing a claim under the FCRA. As noted, Plaintiff is an experienced litigant, who, on information and belief, is receiving legal advice from her son, Thomas Alston, despite the fact that Mr. Alston is not an attorney licensed to practice law in Maryland or in any other jurisdiction. After being involved in seven prior cases involving claims under the FCRA, Plaintiff should know the pleading requirements for both a willful and a negligent violation and her failure to satisfy those requirements here should not be excused by the Court. Any amendment of the complaint will only increase the litigation costs for BB&T, which plays right into the hand of Plaintiff in trying to extract a settlement from the bank.

More than one month later, on July 15, 2014, Plaintiff followed up with BB&T to renew her request for a "certified copy" of the promissory note. *Id.*, ¶ 13. Plaintiff alleges that as of August 21, 2014, she still had not received a "certified copy" of the promissory note so she wrote to BB&T and "requested a payoff statement that did not assess interest for the months July thru September 2014." *Id.*, ¶ 15. Plaintiff apparently believes the purported "delay" in providing her with a "certified copy" of the promissory note allows her to avoid the accrual of interest. On September 2, 2014, BB&T provided Plaintiff with another payoff statement (which included interest for the months July through September 2014) and a copy of a July 24, 2014 letter that BB&T sent to Plaintiff which included a "certified copy" of the promissory note. *Id.*, ¶ 16. Plaintiff did not immediately respond to BB&T. Instead, she waited three months before reinitiating contact with the bank on December 26, 2014. At that time, Plaintiff wrote to BB&T and told the bank that they "should have ceased assessing interest after July 2014" because "BB&T failed to verify it was the 'holder' of the Note." *Id.*, ¶ 21. Plaintiff requested that "her monthly payments from July thru December 2014 . . . [be] applied to principal only" and requested a payoff statement indicating such. *Id.* In response, on January 2, 2015, BB&T provided Plaintiff with a third payoff statement that included interest from July through December 2014. *Id.,* ¶ 22.

Several days before BB&T responded to Plaintiff's December 24, 2014 letter, Plaintiff wrote to the credit bureaus to dispute her loan balance, claiming that the balance should state $129,463.40 rather than $131,809.00; the difference being the interest for the months of July through December 2014.[4] *Id.*, ¶¶ 23-24. Plaintiff stated that "[n]o interest should have been assessed during that period because [she] attempted to pay off the debt but BB&T failed to provide [the "certified copy" of the promissory note]

---

[4] Plaintiff seems to attack, without basis, BB&T's right to enforce the promissory note, yet acknowledges owing BB&T, at least, $129,463.40. *Compare* Compl. ¶ 34, *with* Compl., ¶¶ 21- 23. This type of inconsistency reflects the flimsy nature of Plaintiff's contrived claim against BB&T.

required for [her] to complete the pay off."[5] *Id.*, ¶ 24. Plaintiff therefore asks the credit bureaus to "investigate whether [she] attempted to pay the debt in full and whether BB&T provided the necessary documentation for [her] to complete payoff." *Id.*

Plaintiff alleges that Experian and Trans Union forwarded her notice of dispute to BB&T, but Equifax did not. Compl., ¶¶ 25, 28. In response, BB&T confirmed and "verified that the information being reported was consistent with information that BB&T previously reported" and, therefore, did not "modify the account balance after it concluded a reasonable investigation of Plaintiff's dispute." *Id.*, ¶¶ 29, 32.

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint while preserving judicial resources and avoiding unnecessary discovery. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1007 (1995). On May 18, 2009, the Supreme Court rendered its opinion in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and reiterated in a strongly-worded opinion that the pleading requirements of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) should be rigorously enforced by the lower courts when considering a Rule 12(b) motion to dismiss a complaint. The Court explained that while a complaint attacked by a Rule 12(b)(6) motion does not need "detailed factual allegations," Rule 8(a) "demands more than an unadorned, the-

---

[5] BB&T is unaware of any statute, rule, or regulation that requires a borrower be provided with a "certified copy" of her promissory note in order to payoff of a loan. Plaintiff is using the purported delay in providing the "certified copy" of the promissory note as a springboard for her claim under the FCRA. The only attempt Plaintiff ever made to pay off her loan was on August 17, 2015, when she threatened to file this action against BB&T if it did not accept $10,000.00 to satisfy in full her outstanding debt of approximately $129,000.00. *See* Plaintiff's letter dated August 17, 2015, attached hereto as Exhibit A. Enclosed with the letter was a check for $10,000.00 (drawn on the account of Metropolitan Legal Team, LLC and signed by Thomas Alston) and a draft complaint against BB&T, which bears a signature in the name of Plaintiff that looks nothing like the signature on the complaint filed in this case. *Id.* Plaintiff asked that the check be returned if her "offer" was not accepted. *Id.* BB&T returned the check.

defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b) motion, the Court instructed lower courts to consider "[t]wo working principles." *Iqbal*, 129 S. Ct. at 1949. *First*, a court is not bound to accept as true legal conclusions couched as factual allegations. To the contrary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. *Second*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

To guide lower courts on the "plausibility" principle, the Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent" with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1950 (internal citations omitted). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In short, under *Iqbal* and *Twombly*, a complaint must contain direct and plausible allegations supporting all material elements necessary to sustain recovery under a viable legal theory in order to survive a motion to dismiss under Rule 12(b)(6). A complaint should be dismissed, when, on its face, the complaint is devoid of facts necessary for the plaintiff to prevail under the causes of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

Finally, and particularly pertinent to this case, the requirement that a plaintiff's factual allegations "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" applies to all claimants, including those proceeding *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (applying *Twombly* to *pro se* complaint). Thus, although a "*pro se* complaint 'must be held to less stringent standards than formal pleadings drafted by lawyers,'" a *pro se* plaintiff's "'obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Thigpen v. McDonnell*, 273 Fed. App'x 271, 273 (4th Cir. 2008) (quoting *Erickson*, 551 U.S. at 94; *Twombly*, 550 U.S. at 555) (internal quotation marks omitted) (applying *Twombly* to *pro se* complaint).

Plaintiff's allegations fall far short of the standards articulated in *Iqbal* and *Twombly*, even when accepted as true. Count I of the complaint fails to establish any plausible claim against BB&T upon which relief can be granted and, therefore, should be dismissed pursuant to Rule 12(b)(6).

## ARGUMENT

### I. Plaintiff Has Failed To State A Claim For A Willful Violation Of FCRA § 1681S-2(B).

Plaintiff's own allegations establish that BB&T did not willfully violate FCRA, 15 U.S.C. § 1681s-2(b). FCRA provides that a violation of § 1681s-2(b) may be willful or negligent. *See* FCRA, 15 U.S.C. §§ 1681n & 1681o. A negligent violation of Section 1681s-2(b), if proven, entitles a plaintiff

to "any actual damages sustained by the consumer as a result of the failure" plus court costs and reasonable attorney's fees. Id. § 1681o(a)(1)-(2). A willful violation of Section 1681s-2(b), if proven, entitles to punitive damages, in addition to "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000" and court costs and reasonable attorney's fees. FCRA, Section 1681n(a).

Section 1681s-2(b) provides in relevant part:

(b) Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency

pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b). To state a viable claim under this statute, Plaintiff must allege "(1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information."[6] *Alston v. Cavalry Portfolio Servs.*, LLC, Case No. 8:12-CV-03589-AW, 2013 WL 665036, at *4 (D. Md. Feb. 22, 2013) (quoting *Ausar–El v. Barclay Bank Del.*, Case No. PJM 12–0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012)). However, in order to state a claim for a willful violation of Section 1681s-2(b), Plaintiff must establish that BB&T failed to investigate the credit dispute forwarded by the Credit Bureaus: "To prevail on a willful noncompliance claim and recover punitive damages, [a plaintiff] must show that [a defendant] knowingly and intentionally did not investigate the disputed debt in conscious disregard for his rights." *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004). Here, Plaintiff does not contend that BB&T did not investigate her disputed debt (but claims that the investigation was unreasonable). Compl., ¶ 34. Plaintiff admits that upon receipt of "notice of Plaintiff's dispute from Experian and Trans Union . . . BB&T simply verified that the information being reported was consistent with the information that BB&T previously reported." Compl., ¶ 29. Even assuming that BB&T only undertook these investigative steps, these steps alone are sufficient to defeat Plaintiff's claim that BB&T willfully failed to investigate her credit dispute. A willful violation requires a complete failure to investigate, which is not the case here. Accordingly, Plaintiff's willful violation claim against BB&T should be dismissed with prejudice.

---

[6] Plaintiff also claims that BB&T "failed to notate the mortgage account was disputed after receiving Plaintiff's dispute via the credit bureaus." Compl., ¶ 35. Notwithstanding the merits, *vel non*, of the dispute, BB&T interprets this claim to be grounded in negligence, in which case, the claim fails because Plaintiff has not adequately alleged actual damages. *See* Section II, *infra.*

**II. Because Plaintiff Has Not Established A Willful Violation Of FCRA § 1681s-2(B) And Because She Has Not Sufficiently Alleged Any Actual Damages, The Court Should Dismiss Plaintiff's Alternative Claim For Negligent Violation Of FCRA § 1681s-2(b).**

For the reasons argued above, Plaintiff has failed to plead a willful violation of FCRA, 15 U.S.C. § 1681s-2(b). As a result, Plaintiff may not pursue punitive or statutory damages. *See* 15 U.S.C. §§ 1681n & 1681o. Moreover, Plaintiff has not sufficiently alleged any damages or actual injury that would allow her to maintain her alternative theory that BB&T negligently violated Section 1681s-2(b). Compl., ¶ 36. In cases of a negligent violation, Section 1681s-2(b) is not a strict liability statute and does not provide for statutory damages. Rather, Plaintiff must sufficiently allege "actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1); *see also Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 240 (S.D.N.Y. 2014) (stating that actual damages are a required element of a claim for negligent violation of Section 1681s–2(b)).

Here, Plaintiff offers nothing more than the statement that she is "seeking actual damages in the amount of $10,000." Compl., ¶ 36. Such conclusory statement falls woefully short of satisfying the *Twombly* and *Iqbal* pleading standard. To satisfy the Court's pleading standard, Plaintiff "must allege facts that plausibly suggest that he is entitled to damages." *Nowlin v. Avis Budget Group*, Case No. 1:11CV511, 2011 WL 7087108, at *2 (M.D.N.C. Dec. 22, 2011) (dismissing FCRA § 1681s-2(b) claim for plaintiff's failure to sufficiently allege damages). *Nowlin* and other federal opinions have dismissed claims of negligent violations of Section 1681s-2(b) for failure to sufficiently allege actual damages. *Ritchie*, 14 F. Supp. 3d at 240; *Haley v. TalentWise, Inc.*, 9. F Supp. 3d 1188, 1195 (W.D. Wash. 2014); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617, 623 (N.D. Ill. 2011) ("The plaintiff bears the burden of establishing that he is entitled to damages [under Section 1681s-2(b)]."); *Young v. Harbor Motor Works, Inc.*, Case No. 2:07CV0031JVB, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009)

("Accordingly, [plaintiff] has failed to allege actual damages as required under the FCRA sufficient to raise the possibility of relief above the speculative level."); *Menefee v. City of Country Club Hills*, Case No. 08 C 2948, 2008 WL 4696146, at *3 (N.D. Ill. Oct. 23, 2008).  Despite Plaintiff's burden to show damages plausible on the face of the complaint, she has failed to do so.

Where Plaintiff has no claim for punitive damages and has not alleged any actual damages, Plaintiff has failed to state a claim for a negligent violation of Section 1681s-2(b).  And as argued above, Plaintiff has also failed to state a claim for a willful violation. Therefore, the Court should dismiss the entire Count One of the Complaint, with prejudice.

## CONCLUSION

For the reasons set forth above, Plaintiff has failed to state a claim upon which relief can be granted.  Therefore, BB&T is entitled to dismissal of Count I of the complaint with prejudice.  There being no other claims pending against the bank, BB&T should be dismissed from this action altogether.

Respectfully submitted,

/s/
Brian L. Moffet (Fed. Bar No. 13821)
Zachary S. Schultz (Fed. Bar No. 03927)
MILES & STOCKBRIDGE, P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: 410-385-3656
Fax: 410-727-6464
bmoffet@milesstockbridge.com
zschultz@milesstockbridge.com

*Attorneys for Defendant*
*Branch Banking and Trust Company*

Yvonne R. Alston
10012 Cedarhollow Lane
Largo, Maryland 20774

EXHIBIT A

August 17, 2015

Branch Banking and Trust Company
Post Office Box 2467
Greenville, South Carolina 29602

    RE:    Loan Number 6997610391

Dear BB&T,

    Enclosed is a $10,000 payment to satisfy the debt in full. Also enclosed is a draft of a lawsuit against BB&T. If the enclosed payment is accepted as full satisfaction of the debt, then I agree to waive any and all claims I have against BB&T.[1] The remaining outstanding debt on the Note is approximately $129,000. If I were to retain an attorney and pursue my FCRA claim against BB&T, then my damages award would exceed the outstanding balance on the Note. And being that BB&T has failed to even establish that it is the "holder" of the Note, my offer to satisfy the debt in full for $10,000 as an accord and satisfaction of the debt is a very fair and reasonable offer. If the offer is accepted then retain the check. If the offer is not accepted then return the check to me.

Sincerely,

*Yvonne R. Alston*
Yvonne R. Alston

enc: check 248 and draft of lawsuit

---

[1] BB&T has been on notice of my dispute since May 2014. In *Saunders v. BB&T* the defendant, BB&T, failed to notate a dispute and was assessed $1,000 in statutory damages and $80,000 in punitive damages. *Id.* 526 F.3d 142 (4th Cir. 2008) (upholding a 1:80 ratio). In *Saunders* the plaintiff presented evidence that (1) BB&T's records reflected the ongoing dispute over the debt, (2) BB&T's reports to the CRAs did not reflect that ongoing dispute, and (3) BB&T *intended* not to report that ongoing dispute. Here again BB&T has not reported the account to reflect the ongoing dispute and has intentionally not reported as such. The $80,000 assessment of punitive damages in *Saunders* was based on the plaintiff having no actual damages. The 4th Circuit upheld the $80,000 (1:80 ratio) on the basis that the punitive damages award needed to be sufficient enough to serve the purpose of acting as a deterrence. Being that BB&T was warned about this same violation back in 2008, a more severe punitive award would be justified. Based on *Saunders* my punitive damages award is worth at least $80,000.00 but likely to exceed $100,000 as it will not be based on just $1,000 statutory damages.

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

YVONNE R. ALSTON
10012 Cedarhollow Lane
Largo, MD 20774

    Plaintiff,

v.                                                                        Civil Case No. _____

BRANCH BANKING AND TRUST COMPANY
**Serve:** The Corporation Trust Inc.
     351 W. Camden Street
     Baltimore, Maryland 21201

    Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Yvonne R. Alston, (hereafter the "Plaintiff") and for her complaint against the Defendant Branch Banking And Trust Company ("BB&T") alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for a consumer seeking actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 et seq. (Fair Credit Reporting Act or "FCRA").

### PARTIES

2. Plaintiff is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

3. Defendant BB&T a national bank that provides financial services, including mortgage-related services. BB&T originates, purchases and services mortgages. As part of its servicing functions it furnishes information to consumer reporting agencies as contemplated by the FCRA, 15 U.S.C. § 1681-s-2(a-b).

4. Defendant Equifax is a credit reporting agency that operates throughout the United

1

States, including the state of Maryland.

5. Defendant Experian is a credit reporting agency that operates throughout the United States, including the state of Maryland.

6. Defendant Trans Union is a credit reporting agency that operates throughout the United States, including the state of Maryland.

## FACTS

7. Plaintiff obtained a mortgage refinance loan on her primary residence in June 2013.

8. The Lender and/or originator of the loan was Virginia Heritage Bank ("VHB").

9. The Defendant BB&T claims to have acquired the loan from VHB.

10. By letter dated May 31, 2014 Plaintiff requested BB&T provide a payoff statement and a certified copy of the promissory note.

11. On June 4, 2014 BB&T sent correspondence including a payoff statement, transfer of servicing and a copy of the mortgage Note.

12. The mortgage Note was not certified as a true and accurate copy.

13. By letter dated July 15, 2014 Plaintiff advised BB&T that the mortgage Note was not certified as a direct copy of the original note.

14. BB&T did not respond to Plaintiff's letter dated July 15, 2014.

15. By letter dated August 21, 2014 Plaintiff complained that BB&T had yet to provide a certified copy of the Mortgage Note. Plaintiff requested a payoff statement that did not assess interest for the months July thru September 2014.

15. On September 2, 2014 BB&T sent correspondence including a payoff statement, a certified copy of the mortgage Note and a letter dated July 24, 2014. BB&T claimed that the July 24, 2014 letter was sent to Plaintiff in response to her letter dated July 15, 2014.

16. BB&T's July 24, 2014 letter stated a certified copy of the Note was enclosed and

2

apologized for not previously sending the certified Note.

17. The certified Note was payable to Virginia Heritage Bank and unlike the previous uncertified copy of the Note, the certified Note did not have an allonge.

18. The certified Note was not endorsed in blank and it was not endorsed to BB&T.

19. BB&T was not a holder of the certified Note because it was not endorsed to BB&T.

20. By letter dated December 26, 2014 Plaintiff advised BB&T that she has received two different versions of the mortgage Note and requested an opportunity to physically inspect the actual Note. Plaintiff further stated that BB&T should have ceased assessing in interest after July 2014 for BB&T failed to verify that it was the "holder" of the Note. Continuing, the Plaintiff asserted that her monthly payments for July thru December 2014 should have been applied to principal only and requested a payoff statement indicating such.

21. BB&T responded via correspondence dated January 2, 2015 in which it did not address Plaintiff's complaint that interest should not be assessed for July to December 2014. Rather, BB&T merely provided a payoff statement that included interest for July to December 2014 without any discussion of investigating Plaintiff's inquiry.

22. Plaintiff also sent a dispute letter to Equifax, Experian and Trans Union (collectively, the "credit bureaus") on December 29, 2014. In her dispute letter to the credit bureaus she disputed the balance owed on the mortgage account. Specifically, she stated that the balance should state $129,463.40 but that it incorrectly shows a balance of $131,809.

23. Plaintiff explained in her dispute letter to the credit bureaus that the "cause of the error stems from BB&T's assessment of interest for the months July thru December 2014." Plaintiff further elaborated that "[n]o interest should have been assessed during that period because I attempted to pay off the debt but BB&T failed to provide documentation required for me to complete the pay off." Plaintiff concluded with a request for the credit bureaus to "investigate

whether I attempted to pay the debt in full and whether BB&T provided the necessary documentation for me to complete the payoff."

24.     Upon information and belief Experian and Trans Union forwarded notice of Plaintiff's dispute to BB&T.

25.     Experian responded with its Dispute Results on or about January 15, 2015 in which Experian it stated that the BB&T tradeline was not changed as a result of the processing of Plaintiff's dispute. Upon information and belief none of Experian's employees investigated the merits of Plaintiff's dispute. Experian simply relied on BB&T's conclusions and parroted the results of BB&T's purported investigation.

26.     Trans Union responded with its Investigation Results on January 9, 2015 in which it continued to report BB&T mortgage account balance as $131,809. Upon information and belief none of Trans Union's employees investigated the merits of Plaintiff's dispute. Trans Union simply relied on BB&T's conclusions and parroted the results of BB&T's purported investigation.

27.     Plaintiff did not receive any results of an investigation from Equifax. Upon information and belief Equifax did not conduct an investigation of Plaintiff's dispute and did not forward notice of the dispute to BB&T for BB&T to investigate the dispute.

28.     BB&T received notice of Plaintiff's dispute from Experian and Trans Union but instead of conducting an actual investigation of Plaintiff's dispute, BB&T simply verified that the information being reported was consistent with information that BB&T previously reported.

29.     Not only did BB&T fail to investigate Plaintiff's dispute but BB&T did not notate that the account was disputed.

### COUNT ONE: VIOLATIONS OF FCRA

30.     Defendant violated the FCRA at §1681s-2(b)(1)((E)(i) by failing to modify the account balance after it concluded a reasonable investigation of Plaintiff's dispute.

31. Defendant is in possession of the certified copy of the Note that it sent to Plaintiff. The Note was not indorsed to BB&T so Plaintiff knows that it sent Plaintiff documentation to suggest that BB&T was not a holder of the Note. The certified copy of the Note establishes that the Note was not indorsed to BB&T and BB&T knows that it is not a "holder" of a Note that is payable to VHB.

32. A reasonable investigation by Defendant would have concluded that it had no right to collect payment or at best that Plaintiff had reason not to pay Defendant after receiving a version of the Note that indicates Defendant is not entitled to receive payment. Defendant was required to modify its reporting after it verified the Note was not payable to it or to bearer.

33. Defendant further violated the FCRA when it failed to notate the mortgage account was disputed after receiving Plaintiff's dispute via the credit bureaus.

34. Plaintiff is seeking punitive damages in the amount of $80,000 for Defendant's willful violations of the FCRA under 15 U.S.C. §1681n. Plaintiff is also seeking actual damages in the amount of $10,000 for Defendants' negligent and willful violations of the FCRA under 15 U.S.C. §§1681n & 1681o. Additionally, Plaintiff is entitled to statutory damages of $1,000 for each FCRA violation and his costs for bringing this action. Plaintiff also will seek attorney fees once he retains counsel.

Respectfully submitted,

*Yvonne R. Alston*

Yvonne R. Alston
10012 Cedarhollow Lane
Largo, MD 20774
(301) 350-5780
yvonne_alston@comcast.net

