IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| YVONNE R. ALSTON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: 15-cv-03100-GJH |
| BRANCH BANKING AND TRUST COMPANY, *et al.*, | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
BRANCH BANKING AND TRUST COMPANY'S MOTION TO
DISMISS COUNTS I, II, AND III OF THE FIRST AMENDED COMPLAINT**

Defendant Branch Banking and Trust Company ("BB&T"), by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss Counts I, II, and III of the First Amended Complaint ("FAC")[1] filed by Plaintiff Yvonne R. Alston ("Plaintiff"). Assuming the truth of the allegations in the FAC, Plaintiff has failed to state a claim against BB&T upon which relief can be granted, and Counts I, II, and III[2] should be dismissed with prejudice.

---

[1] BB&T notes that Plaintiff's latest pleading is titled "Complaint and Jury Demand" (Dkt. No. 27) but, in reality, it is an amended complaint. Accordingly, to avoid further confusion, BB&T refers to Plaintiff's most recent pleading as the "First Amended Complaint."

[2] Plaintiff's First Amended Complaint appears to contain seven (7) causes of action, yet Plaintiff has three (3) causes of action labeled "Count Two" and two (2) causes of action labeled "Count Three." For clarity purposes, BB&T refers to the causes of action against the bank as: Count One – Violations of FCRA, FAC, ¶¶ 46-51 ("Count I"); Count Two – Violations of Maryland Consumer Debt Collection Act, FAC, ¶¶ 79-82 ("Count II"); and Count Three – Violations of Maryland Consumer Protection Act, FAC, ¶¶ 83-86 ("Count III").

## INTRODUCTION

Plaintiff Yvonne R. Alston, proceeding *pro se*, is a frequent litigant in this Court[3] with a long history of filing questionable claims as a means to derive a source of income from settlements. This case represents her latest effort to keep pace with the other members of her family who have similarly filed questionable claims[4] in hopes of leveraging the potential costs of litigation to achieve early settlements. *See Alston v. Creditors Interchange Receivables Mgmt.*, 2012 U.S. Dist. LEXIS 185736, at *6 (D. Md. Sept. 21, 2012) (Chief Judge Chasanow finding that the Alston family "are engaged in an

---

[3] In the last three years, Plaintiff has filed seven other lawsuits alleging some type of violation of the Fair Credit Reporting Act or the Fair Debt Collection Practices Act or both. *Alston v. Hartford Fin. Services, Inc.*, Case No. 12-cv-02270-AW (July 31, 2012 D. Md.) *Alston v. Central Credit Services, Inc.* Case No. 12-cv-02711-DKC (Sept. 11, 2013 D. Md.); *Alston v. Palisades Collection, L.L.C.*, Case No. 13-cv-01012-RWT (Apr. 5, 2013) ; *Alston v. Northstar Location Services, LLC*, Case No. 13-cv-01218 PWG (Apr. 24, 2013); *Alston v. Equifax Info. Services, LLC*, Case No. 13-cv-02388-DKC (Aug. 5, 2013 D. Md); *Alston v. RBS Citizens, N.A.*, Case No. 13-cv-02675-TDC (Sept. 13, 2013 D. Md.) *Alston v. Chase Bank USA, N.A.*, Case No. 14-cv-2987-PWG (Sept. 29, 2014 D. Md.). All of these prior lawsuits appear to have been dismissed as a result of a settlement between the parties.

[4] Plaintiff is the mother of Thomas Alston, Candace Alston and Jonathan Alston, and together, the four of them are responsible for **thirty-eight** separate lawsuits pending in this Court since 2011. Every lawsuit involves claims related to credit reporting or debt collection. *See* fn. 1, *supra*, for Plaintiff's other cases; Thomas Alston's cases include: *Alston v. Equifax Info. Services, LLC*, Case No. 15-cv-03099 TDC (Oct. 13, 2015 D. Md.); *Alston v. Citibank, N.A.*, Case No. 14-cv-03199-DKC (Oct. 10, 2014 D. Md.); *Alston v. RJM Acquisitions LLC*, Case No. 13-cv-01704-RWT (June 12, 2013 D. Md.); *Alston v. ER Solutions, Inc.*, Case No.13-cv-01598-PJM (June 3, 2013 D. Md.); *Alston v. Equifax Information Services, LLC*, Case No. 13-cv-01232-PWG (April 29, 2013 D. Md.); *Alston v. HSBC Card Services, Inc.*, Case No. 13-cv-01226-PWG (April 25, 2013); *Alston v. Wells Fargo Bank, N.A.*, Case No. 12-cv-03745-AW (Dec. 21, 2012 D. Md.); *Alston v. Wells Fargo Bank, N.A.*, Case No. 12-cv-03671-AW (Dec. 14, 2012 D. Md.); *Alston v. Cavalry Portfolio Services, LLC*, Case No. 12-cv-03589-AW (Dec. 7, 2012 D. Md.); *Alston v. ER Solutions, Inc.*, Case No. 12-cv-02542-RWT (Aug. 24, 2012 D. Md.); *Alston v. Professional Account Management, LLC*, Case No. 12-cv-02064-AW (July 11, 2012 D. Md.); *Alston v. Cavalry Portfolio Services, LLC*, Case No. 12-cv-02065-AW (July 11, 2012 D. Md.); *Alston v. Wells Fargo Bank, N.A.*, Case No. 12-cv-02001-JFM (July 5, 2012 D. Md.); *Alston v. Bank of America, N.A.*, Case No. 12-cv-01819-AW (June 20, 2012 D. Md.); *Alston v. NCO Financial Systems, Inc.*, Case No. 12-cv-01708-AW (June 11, 2012 D. Md.); *Alston v. FIA Card Services N.A.*, Case No. 11-cv-03722-JFM (Dec. 22, 2011 D. Md.); *Alston v. Creditors Interchange, Inc.*, Case No. 11-cv-02292-RWT (Aug. 8, 2011 D. Md.). Candace Alston's cases include: *Alston v, First Premier, Inc.*, Case No. 12-cv-02244-PJM (July 30, 2012 D. Md), *Alston v. Monarch Bank*, Case No. 12-cv-01512-JFM (May 21, 2012 D. Md.); *Alston v. HSBC Card Services, Inc.*, Case No. 12-cv-02732-RWT (Sept. 13, 2012 D. Md.); *Alston v. Discover Fin. Services*, Case No. 12-cv-03357-AW (Nov. 15, 2012 D. Md.); *Alston v. Equifax Info. Services, LLC*, Case No. 13-cv-01230-TDC (Apr. 25, 2013 D. Md.); *Alston v. Wells Fargo Home Mortgage*, Case No. 13-cv-03147-TDC (Oct. 23, 2013 D. Md.) *Alston v. Virginia Heritage Bank*, Case No. 14-cv-00656-RWT (Mar. 6, 2014 D. Md.); *Alston v. Transunion, LLC*, Case No. 14-cv-01180-TDC (Apr. 10, 2014 D. Md.); *Alston v. Experian Info. Services, Inc.*, 14-cv-03957-TDC (Dec. 29, 2014 D. Md.); Jonathan Alston's cases include: *Alston v. Transworld Systems, Inc.*, Case No. 12-cv-01815-JFM (June 19, 2012 D. Md.); *Alston v. LHR, Inc.*, Case No. 12-cv-03294-DKC (Nov. 9, 2012 D. Md.); *Alston v. United Collections Bureau, Inc.*, Case No. 13-cv-00913-DKC (Mar. 27, 2013 D. Md.); *Alston v. Equifax Info. Systems, LLC*, Case No.13-cv-02390-DKC (Aug. 15, 2013 D. Md.).

enterprise of Fair Credit Reporting Act litigation"). Despite Plaintiff's experience as a serial litigant, she has failed to allege sufficient facts to state a claim against BB&T.

According to Count I of the FAC, Plaintiff believes that BB&T willfully and negligently violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), by (i) not performing a "reasonable investigation" upon receipt of Plaintiff's notice of dispute and (ii) failing to report to the credit bureaus that Plaintiff disputed her loan balance. Both of Plaintiff's claims are legally deficient. Plaintiff's willful violation claim fails because Plaintiff affirmatively alleges that BB&T did some type of investigation after receiving notice of Plaintiff's dispute. Although Plaintiff suggests, without any factual support, that BB&T's investigation was deficient, an investigation was nevertheless performed and that investigation causes Plaintiff's willful violation claim to fail as a matter of law.

Plaintiff's negligent violation claim likewise fails. Other than "seeking actual damages in the amount of $10,000" (FAC, ¶ 51), Plaintiff has not alleged any facts that plausibly suggest that she sustained any actual damages as a result of BB&T's purported conduct. The absence of such factual support is fatal to Plaintiff's negligent violation claim and because the willful violation claim also fails, BB&T is entitled to dismissal, with prejudice, of Count One in its entirety.

In addition to her legally deficient FCRA claim, Plaintiffs uses the FAC to assert new claims for violations of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law (C.L.) §§ 14-201, *et seq.* ("MCDCA"), and the Maryland Consumer Protection Act, C.L. §§ 13-101, *et seq.* ("MCPA"). Both claims arise from an October 2, 2015 mortgage billing statement that Plaintiff claims demands payment for more than the amount due. According to Plaintiff, the statement reflects an amount owed of $1,910.24, yet she has not missed any payments and her regular monthly mortgage payment is only $1,005.12. While both of these statements are true, Plaintiff ignores the fact that she

failed to make her October mortgage payment on time. Plaintiff's monthly mortgage payment is due the first day of every month and, in October, she did not make her payment until October 14, 2015. As a result, when BB&T sent the statement on October 2, 2015, it reflected the past due payment from October 1, 2015 as well as the payment due November 1, 2015 (less a partial payment of $100.00 that BB&T was holding). Accordingly, there is nothing false or inaccurate about the October 2nd statement to give rise to a claim under either the MCDCA or the MCPA. Because these new claims are just as defective as Plaintiff's claim under the FCRA, BB&T is entitled to dismissal of the FAC, with prejudice.

## FACTUAL BACKGROUND

In June 2013, Plaintiff obtained a mortgage loan secured by a deed of trust on her primary residence. FAC, ¶ 8. The loan, which is memorialized by a promissory note signed by Plaintiff, was originated by Virginia Heritage Bank and subsequently assigned by BB&T. *Id.*, ¶ 9. A true and correct copy of Plaintiff's Note is attached as Exhibit A.[5]

On May 31, 2014, Plaintiff requested BB&T to provide a payoff statement along with a "certified copy" of the promissory note. *Id.*, ¶ 11. BB&T responded four days later on June 4, 2014 and

---

[5] This Court may consider Plaintiff's Note as well as her payment history (attached as Exhibit C) and the billing statements (attached as Exhibits D and E) at the motion to dismiss stage because those documents are "integral to and explicitly relied on in the Complaint." *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *see American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." (internal quotation and citation omitted). The Third Circuit has explained the rationale underlying this exception as follows:

> [T]he primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated "[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation marks omitted).

4

provided Plaintiff with the requested payoff statement and a copy of the promissory note, which was not "certified." *Id.*, ¶¶ 12-13.

More than one month later, on July 15, 2014, Plaintiff followed up with BB&T to renew her request for a "certified copy" of the promissory note. *Id.*, ¶ 14. Plaintiff alleges that as of August 21, 2014, she still had not received a "certified copy" of the promissory note so she wrote to BB&T and "requested a payoff statement that did not assess interest for the months July thru September 2014." *Id.*, ¶ 16. Plaintiff apparently believes the purported "delay" in providing her with a "certified copy" of the promissory note allows her to avoid the accrual of interest. On September 2, 2014, BB&T provided Plaintiff with another payoff statement (which included interest for the months July through September 2014) and a copy of a July 24, 2014 letter that BB&T sent to Plaintiff which included a "certified copy" of the promissory note. *Id.*, ¶ 17. Plaintiff did not immediately respond to BB&T. Instead, she waited three months before reinitiating contact with the bank on December 26, 2014. At that time, Plaintiff wrote to BB&T and told the bank that they "should have ceased assessing interest after July 2014" because "BB&T failed to verify it was the 'holder' of the Note." *Id.*, ¶ 22. Plaintiff requested that "her monthly payments from July thru December 2014 . . . [be] applied to principal only" and requested a payoff statement indicating such. *Id.* In response, on January 2, 2015, BB&T provided Plaintiff with a third payoff statement that included interest from July through December 2014. *Id.*, ¶ 23.

Several days before BB&T responded to Plaintiff's December 24, 2014 letter, Plaintiff wrote to the credit bureaus to dispute her loan balance, claiming that the balance should state $129,463.40 rather than $131,809.00; the difference being the interest for the months of July through December 2014.[6] *Id.*,

---

[6] Plaintiff seems to attack, without basis, BB&T's right to enforce the promissory note, yet acknowledges owing BB&T, at least, $129,463.40. *Compare* FAC, ¶ 49, *with* FAC, ¶¶ 22-24. This type of inconsistency reflects the flimsy nature of Plaintiff's contrived claims against BB&T.

5

¶¶ 24-25. Plaintiff stated that "[n]o interest should have been assessed during that period because [she] attempted to pay off the debt but BB&T failed to provide [the "certified copy" of the promissory note] required for [her] to complete the pay off."[7] *Id.*, ¶ 25. Plaintiff therefore asks the credit bureaus to "investigate whether [she] attempted to pay the debt in full and whether BB&T provided the necessary documentation for [her] to complete payoff." *Id.*

Plaintiff alleges that Experian and Trans Union forwarded her notice of dispute to BB&T, but Equifax did not. FAC, ¶¶ 26, 31. In response, BB&T confirmed and "verified that the information being reported was consistent with information that BB&T previously reported" and, therefore, did not "modify the account balance after it concluded a reasonable investigation of Plaintiff's dispute." *Id.*, ¶¶ 32, 47.

Subsequently, on October 2, 2015, BB&T mailed Plaintiff her monthly mortgage billing statement. *Id.*, ¶ 38. As of that date, BB&T had not yet received the payment due October 1, 2015. *See* Ex. A, Plaintiff's Note, ¶ 3 (providing payment due "on the 1ST day of each month . . ."); *see also* Plaintiff's Payment History, attached as Exhibit C (showing October payment received on October 14, 2015). Consequently, the October 2nd statement included the payment that *was* due on October 1, 2015[8] as well as the payment due November 1, 2015 and requested the "Total Payment Amount" of $1,910.24. *Id.*, ¶ 38; *see also* Plaintiff's October 2nd statement, attached as Exhibit D. Approximately two weeks

---

[7] BB&T is unaware of any statute, rule, or regulation that requires a borrower be provided with a "certified copy" of her promissory note in order to payoff of a loan. Plaintiff is using the purported delay in providing the "certified copy" of the promissory note as a springboard for her claim under the FCRA. The only attempt Plaintiff ever made to pay off her loan was on August 17, 2015, when she threatened to file this action against BB&T if it did not accept $10,000.00 to satisfy in full her outstanding debt of approximately $129,000.00. *See* Plaintiff's letter dated August 17, 2015, attached hereto as Exhibit B. Enclosed with the letter was a check for $10,000.00 (drawn on the account of Metropolitan Legal Team, LLC and signed by Thomas Alston) and a draft complaint against BB&T, which bears a signature in the name of Plaintiff that looks nothing like the signature on the complaint filed in this case. *Id.* Plaintiff asked that the check be returned if her "offer" was not accepted. *Id.* BB&T returned the check.

[8] Although Plaintiff's Note requires payment on the 1st day of each month, the Note also grants Plaintiff a fifteen (15) day grace period to make a payment without incurring a late charge. *See* Ex. A (Plaintiff's Note), at ¶ 6.A.

later and after BB&T received Plaintiff's October mortgage payment on October 14, 2015, BB&T sent Plaintiff another monthly mortgage billing statement, which she omits from the FAC. That statement, which is dated October 14, 2015, reflects receipt of Plaintiff's October mortgage payment and shows Plaintiff's account current with a payment of $1,005.12 due on November 1, 2015. *See* Plaintiff's October 14, 2015, billing statement, attached as Exhibit E.

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint while preserving judicial resources and avoiding unnecessary discovery. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1007 (1995). On May 18, 2009, the Supreme Court rendered its opinion in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and reiterated in a strongly-worded opinion that the pleading requirements of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) should be rigorously enforced by the lower courts when considering a Rule 12(b) motion to dismiss a complaint. The Court explained that while a complaint attacked by a Rule 12(b)(6) motion does not need "detailed factual allegations," Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b) motion, the Court instructed lower courts to consider "[t]wo working principles." *Iqbal,* 129 S. Ct. at 1949. *First*, a court is not bound to accept as true legal

conclusions couched as factual allegations. To the contrary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. *Second*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

To guide lower courts on the "plausibility" principle, the Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent" with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1950 (internal citations omitted). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In short, under *Iqbal* and *Twombly*, a complaint must contain direct and plausible allegations supporting all material elements necessary to sustain recovery under a viable legal theory in order to survive a motion to dismiss under Rule 12(b)(6). A complaint should be dismissed, when, on its face, the complaint is devoid of facts necessary for the plaintiff to prevail under the causes of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

Finally, and particularly pertinent to this case, the requirement that a plaintiff's factual allegations "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'"

applies to all claimants, including those proceeding *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (applying *Twombly* to *pro se* complaint). Thus, although a "*pro se* complaint 'must be held to less stringent standards than formal pleadings drafted by lawyers,'" a *pro se* plaintiff's "'obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Thigpen v. McDonnell*, 273 Fed. App'x 271, 273 (4th Cir. 2008) (quoting *Erickson*, 551 U.S. at 94; *Twombly*, 550 U.S. at 555) (internal quotation marks omitted) (applying *Twombly* to *pro se* complaint).

Plaintiff's allegations fall far short of the standards articulated in *Iqbal* and *Twombly*, even when accepted as true. Plaintiff's FAC fails to establish any plausible claim against BB&T upon which relief can be granted and, therefore, should be dismissed pursuant to Rule 12(b)(6). Inasmuch as Plaintiff has already amended her pleading, dismissal of the FAC should be with prejudice and without leave to amend.

## ARGUMENT

**I. Plaintiff Has Failed To State A Claim For A Violation Of The FCRA.**

**A. Plaintiff Has Failed To State A Claim For A Willful Violation Of FCRA § 1681S-2(B).**

Plaintiff's own allegations establish that BB&T did not willfully violate FCRA, 15 U.S.C. § 1681s-2(b). FCRA provides that a violation of § 1681s-2(b) may be willful or negligent. *See* FCRA, 15 U.S.C. §§ 1681n & 1681o. A negligent violation of Section 1681s-2(b), if proven, entitles a plaintiff to "any actual damages sustained by the consumer as a result of the failure" plus court costs and reasonable attorney's fees. *Id.* § 1681o(a)(1)-(2). A willful violation of Section 1681s-2(b), if proven, entitles to punitive damages, in addition to "any actual damages sustained by the consumer as a result of

the failure or damages of not less than $100 and not more than $1,000" and court costs and reasonable attorney's fees. FCRA, Section 1681n(a).

Section 1681s-2(b) provides in relevant part:

> (b) Duties of furnishers of information upon notice of dispute
>
> (1) In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency
>
> pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
> (i) modify that item of information;
>
> (ii) delete that item of information; or
>
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b). To state a viable claim under this statute, Plaintiff must allege "(1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting

agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information."[9] *Alston v. Cavalry Portfolio Servs.*, LLC, Case No. 8:12-CV-03589-AW, 2013 WL 665036, at *4 (D. Md. Feb. 22, 2013) (quoting *Ausar–El v. Barclay Bank Del.*, Case No. PJM 12–0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012)). However, in order to state a claim for a willful violation of Section 1681s-2(b), Plaintiff must establish that BB&T failed to investigate the credit dispute forwarded by the Credit Bureaus: "To prevail on a willful noncompliance claim and recover punitive damages, [a plaintiff] must show that [a defendant] knowingly and intentionally did not investigate the disputed debt in conscious disregard for his rights." *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004). Here, Plaintiff does not contend that BB&T did not investigate her disputed debt (but claims that the investigation was unreasonable). FAC, ¶ 49. Plaintiff admits that upon receipt of "notice of Plaintiff's dispute from Experian and Trans Union . . . BB&T simply verified that the information being reported was consistent with the information that BB&T previously reported." FAC, ¶ 32. Even assuming that BB&T only undertook these investigative steps, these steps alone are sufficient to defeat Plaintiff's claim that BB&T willfully failed to investigate her credit dispute. A willful violation requires a complete failure to investigate, which is not the case here, nor is it alleged. Accordingly, Plaintiff's willful violation claim against BB&T should be dismissed with prejudice.

---

[9] Plaintiff also claims that BB&T "failed to notate the mortgage account was disputed after receiving Plaintiff's dispute via the credit bureaus." FAC, ¶ 50. Notwithstanding the merits, *vel non*, of the dispute, BB&T interprets this claim to be grounded in negligence, in which case, the claim fails because Plaintiff has not adequately alleged actual damages. *See* Section II, *infra*.

### B. Because Plaintiff Has Not Established A Willful Violation Of FCRA § 1681s-2(B) And Because She Has Not Sufficiently Alleged Any Actual Damages, The Court Should Dismiss Plaintiff's Alternative Claim For Negligent Violation Of FCRA § 1681s-2(b).

For the reasons argued above, Plaintiff has failed to plead a willful violation of FCRA, 15 U.S.C. § 1681s-2(b). As a result, Plaintiff may not pursue punitive or statutory damages. *See* 15 U.S.C. §§ 1681n & 1681o. Moreover, Plaintiff has not sufficiently alleged any damages or actual injury that would allow her to maintain her alternative theory that BB&T negligently violated Section 1681s-2(b). FAC, ¶ 51. In cases of a negligent violation, Section 1681s-2(b) is not a strict liability statute and does not provide for statutory damages. Rather, Plaintiff must sufficiently allege "actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1); *see also Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 240 (S.D.N.Y. 2014) (stating that actual damages are a required element of a claim for negligent violation of Section 1681s–2(b)).

Here, Plaintiff offers nothing more than the statement that she is "seeking actual damages in the amount of $10,000." FAC, ¶ 51. Such a conclusory statement falls woefully short of satisfying the *Twombly* and *Iqbal* pleading standard. To satisfy the Court's pleading standard, Plaintiff "must allege facts that plausibly suggest that he is entitled to damages." *Nowlin v. Avis Budget Group*, Case No. 1:11CV511, 2011 WL 7087108, at *2 (M.D.N.C. Dec. 22, 2011) (dismissing FCRA § 1681s-2(b) claim for plaintiff's failure to sufficiently allege damages). *Nowlin* and other federal opinions have dismissed claims of negligent violations of Section 1681s-2(b) for failure to sufficiently allege actual damages. *Ritchie*, 14 F. Supp. 3d at 240; *Haley v. TalentWise, Inc.*, 9. F Supp. 3d 1188, 1195 (W.D. Wash. 2014); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617, 623 (N.D. Ill. 2011) ("The plaintiff bears the burden of establishing that he is entitled to damages [under Section 1681s-2(b)]."); *Young v. Harbor Motor Works, Inc.*, Case No. 2:07CV0031JVB, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009)

("Accordingly, [plaintiff] has failed to allege actual damages as required under the FCRA sufficient to raise the possibility of relief above the speculative level."); *Menefee v. City of Country Club Hills*, Case No. 08 C 2948, 2008 WL 4696146, at *3 (N.D. Ill. Oct. 23, 2008). Despite Plaintiff's burden to show damages plausible on the face of the complaint, she has failed to do so.

Where Plaintiff has no claim for punitive damages and has not alleged any actual damages, Plaintiff has failed to state a claim for a negligent violation of Section 1681s-2(b). And as argued above, Plaintiff has also failed to state a claim for a willful violation. Therefore, the Court should dismiss the entirety of Count I of First Amended Complaint, with prejudice.

## II. Plaintiff's Claims For Violations Of The MCDCA And MCPA Fail Because BB&T Accurately Stated The Amount Due And Owing On Plaintiff's October 2nd Statement.

BB&T accurately stated the amount due by Plaintiff in its October 2nd statement. The MCDCA provides that a "debt collector" may not "claim, attempt, or threaten *to enforce a right with knowledge that the right does not exist.*" C.L. § 14-202(8) (emphasis added). This language has been interpreted to "require[] Plaintiffs to allege that Defendants acted with knowledge as to the *invalidity* of the debt." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 769-70 (D. Md. 2012) (emphasis in original). Plaintiff here cannot establish the threshold pleading requirements of a MCDCA claim because BB&T's October 2nd statement accurately reflected the amount due as of that date. Because Plaintiff's MCDCA claim fails so too does her derivative claim under the MCPA.

Plaintiff's own Note, payment history and billing statements reflect the following: (1) Plaintiff's monthly mortgage payment is due the first day of every month, and Plaintiff did not make her October payment on the first day of that month (Ex. A, Plaintiff's Note and Ex. C, payment history); (2) On

October 2, 2015, BB&T sent Plaintiff a notice informing her that she owed $1,910.24[10] (Ex. D, October 2nd statement); (3) The October 2nd statement noted that Plaintiff was past due $1,005.12 because she had not made her October mortgage payment and had another payment of $1,005.12 due on November 1, 2015 (*id.*); (4) On October 14, 2015, Plaintiff made her October mortgage payment (Ex. C, payment history); (4) On the same day, BB&T mailed Plaintiff an updated billing statement explaining that Plaintiff's account was now current and that her November 2015 mortgage payment of $1,005.12 was due on or before November 1 (Ex. E, October 14th statement). Simply put, when BB&T mailed the billing statement to Plaintiff on October 2nd, Plaintiff had not made her October mortgage payment and therefore, the statement reflected the amount past due from October as well as the amount due on November 1, 2015. Together, these amounts total $2,010.24. However, as a result of Plaintiff sometimes paying more than the regular monthly amount (FAC, ¶ 39), BB&T was holding $100.00 as a partial payment, which when applied to the amounts reflected in the October 2nd statement, resulted in a payment due of $1,910.24 on or before November 1, 2015. Because this amount was accurate as of October 2, 2015, Plaintiff's claims under the MCDCA and MCPA fail.

Notably, Plaintiff neglects to inform the Court of the October 14th statement updating her account status and intentionally avoids alerting the Court to this statement in an effort to draw attention away from the untenable nature of her claims. That Plaintiff references the October 2nd statement, but omits the October 14th statement, is sanctionable. Plaintiff is effectively advancing claims that she knows lack any factual support.

---

[10] BB&T notes that page 3 of the October 2 statement contains a release of Plaintiff's September payment of $1,005.12 that was held in suspense. *See* Ex. D at 3. As reflected in Plaintiff's payment history, that amount was released from suspense on October 2 and was credited as of September 9, 2015. *See* Ex. C (payment history).

## CONCLUSION

For the reasons set forth above, Plaintiff has failed to state a claim upon which relief can be granted. Therefore, BB&T is entitled to dismissal of Counts I, II, and III of the First Amended Complaint with prejudice.

Respectfully submitted,

_____/s/_____
Brian L. Moffet (Fed. Bar No. 13821)
Zachary S. Schultz (Fed. Bar No. 03927)
MILES & STOCKBRIDGE, P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: 410-385-3656
Fax: 410-727-6464
bmoffet@milesstockbridge.com
zschultz@milesstockbridge.com

*Attorneys for Defendant*
*Branch Banking and Trust Company*