FILED
U.S. DISTRICT COURT
**IN THE UNITED STATES DISTRICT COURT** OF MARYLAND
**FOR THE DISTRICT OF MARYLAND**

**Southern Division**

2016 AUG 26  A 10: 55

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

|  |  |  |
|---|---|---|
| **YVONNE R. ALSTON,** | * |  |
| **Plaintiff,** | * |  |
|  | * |  |
| **v.** | * | **Case No.: GJH-15-3100** |
|  | * |  |
| **BRANCH BANKING & TRUST COMPANY, et al.,** | * |  |
| **Defendants.** | * |  |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OPINION

In this action, which was removed to this Court from the Circuit Court for Prince

George's County, Maryland, Plaintiff Yvonne R. Alston, who is ostensibly proceeding *pro se*,[1]

alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the

Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et*

*seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-

101 *et seq.* against Defendants Branch Banking and Trust Company ("BB&T"), Equifax

Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"),

Trans Union, LLC ("Trans Union"), and Midland Credit Management, Inc. ("Midland")

---

[1] Plaintiff's filings in this action appear to have been drafted by an individual with some legal training, and her claims are similar to multiple other cases that have been filed in this Court by Plaintiff and other members of her family. *See Alston v. Creditors Interchange Receivable Mgmt., LLC*, No. CIV.A. AW 12-1708, 2012 WL 4370124, at *1 (D. Md. Sept. 21, 2012) (noting that Plaintiff and her son, Thomas Alston, and daughters Candace and Kimberly Alston, are engaged in an "enterprise of Fair Credit Reporting Act litigation"); *see also Alston v. Cent. Credit Servs., Inc.*, No. CIV.A. DKC 12-2711, 2013 WL 4543364, at *1 (D. Md. Aug. 26, 2013); *Alston v. Hartford Fin. Servs., Inc.*, No. AW-12-2270 (D. Md. July 31, 2012); *Alston v. Central Credit Services, Inc.*, No. DKC-12-2711 (D. Md. Sept. 11, 2012); *Alston v. Palisades Collection, LLC*, No. RWT-13-1012 (D. Md. Apr. 5, 2013); *Alston v. Northstar Location Servs., LLC*, No. PWG-13-1218 (D. Md. Apr. 24, 2013); *Alston v. Equifax Info. Servs., LLC*, No. DKC-13-2388 (D. Md. Aug. 15, 2013); *Alston v. RBS Citizens, N.A.*, No. TDC-13-2675 (D. Md. Sept. 13, 2013); *Alston v. Chase Bank USA, N.A.*, No. PWG-14-2987 (D. Md. Sept. 29, 2014).

(collectively, "Defendants"). ECF No. 27. Multiple dispositive motions are currently pending before the Court, including two motions to dismiss Plaintiff's Amended Complaint filed by Experian and BB&T, ECF Nos. 31 & 31, and a motion for judgment on the pleadings filed by TransUnion, ECF No. 44. No hearing is necessary to resolve these motions. *See* Loc. R. 105.6 (D. Md.). For the reasons that follow, BB&T's Motion to Dismiss, ECF No. 32, is granted, in part, and denied, in part; Experian's Motion to Dismiss, ECF No. 31, is granted; and Trans Union's Motion for Judgment on the Pleadings, ECF No. 49, is granted, in part, and denied, in part.

## I.    BACKGROUND[2]

According to the Amended Complaint, Plaintiff obtained a mortgage refinance loan on her primary residence in June 2013 from Virginia Heritage Bank. ECF No. 27 ¶¶ 8–9. The promissory note (the "Note") executed by Plaintiff in exchange for the loan indicated that Plaintiff would make her monthly payments on the loan on the first day of each month, and that if she failed to pay by that date, Plaintiff would be deemed to be in default. ECF No. 32-2 at 2–3. The Note nevertheless further provided that late charges would not be assessed so long as the holder of the Note received any monthly payment by the fifteenth day of each month. *Id.* at 3.

At some point, BB&T acquired the loan from Virginia Heritage Bank. ECF No. 27 ¶ 10. On May 31, 2014, Plaintiff sent a letter to BB&T requesting a payoff statement and certified copy of the Note. *Id.* ¶ 11. On June 4, 2014, BB&T sent Plaintiff a payoff statement, a notice of transfer of servicing, and a copy of the Note. *Id.* ¶ 12. According to Plaintiff, the Note sent in that correspondence "was not certified as a true and accurate copy." *Id.* ¶ 13.

---

[2] In considering Defendants' motions, the Court relies upon the facts alleged in the Amended Complaint, as well as materials attached to Defendants' motions to dismiss insofar as those materials are integral to the Amended Complaint and their authenticity is not disputed. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). All facts are viewed in the light most favorable to Plaintiff.

2

On July 15, 2014, Plaintiff advised BB&T that the Note was not certified as a direct copy of the original Note, but Plaintiff did not receive any response to that correspondence. *Id.* ¶¶ 14–15. On August 21, 2014, Plaintiff again complained that BB&T had not sent a certified copy of the Note, and she again requested a payoff statement, but this time asked that such statement not assess interest for the months of July through September 2014. *Id.* ¶ 16. On September 2, 2014, BB&T sent Plaintiff a payoff statement, a certified copy of the Note, and a copy of a letter dated July 24, 2014, which, according to BB&T, was sent in response to Plaintiff's July 15, 2014 letter. *Id.* ¶ 17. The July 24, 2014 letter from BB&T enclosed a copy of the certified Note, which, unlike the previous copy she had received, was payable to Virginia Heritage Bank and did not include an allonge indorsed in blank or indorsed to BB&T.[3] *Id.* ¶¶ 19–20. Plaintiff alleges, therefore, that BB&T was not a holder of the certified Note. *Id.* ¶ 20.

On December 26, 2014, Plaintiff advised BB&T that she had received two different versions of the Note and requested an opportunity to inspect the original copy. She further argued that BB&T should have ceased assessing interest on her loan after July 2014 due to BB&T's failure to verify that it was the holder of the Note, and that the payments she submitted for the months of July through December 2014 should have been applied to her principal balance only. *Id.* ¶ 22. Plaintiff also requested a payoff statement that would reflect these demands. *Id.* BB&T responded to Plaintiff's request on January 2, 2015, but the payoff statement sent included interest assessed for the months of July through December 2014. *Id.* ¶ 23.

---

[3] *See Deutsche Bank Nat. Trust Co. v. Brock*, 63 A.3d 40, 42 (Md. 2013) (citation and internal quotation marks omitted) ("An allonge is generally a slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements," and, pursuant to Md. Code Ann., Com. Law § 3-204(a), is considered to be a part of the note); Md. Code Ann., Com. Law § 3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.")

On December 29, 2014, Plaintiff sent a dispute letter to three consumer reporting agencies ("CRAs"), Equifax, Experian, and Trans Union in which she stated that the balance on her mortgage account was incorrect. According to Plaintiff, rather than a balance of $131,809, her report should show a balance of $129,463.40. *Id.* ¶ 24. Plaintiff explained in the letter that the "cause of the error stems from BB&T's assessment of interest for the months [of] July [through] December 2014" and that "[n]o interest should have been assessed during that period because [Plaintiff] attempted to pay off the debt but BB&T failed to provide documentation required for [her] to complete the [payoff]." *Id.* ¶ 25. Plaintiff asked that the CRAs "investigate whether [Plaintiff] attempted to pay the debt in full and whether BB&T provided the necessary documentation" for her to complete the payoff. *Id.* Plaintiff alleges that "[u]pon information and belief," Experian and Trans Union forwarded notice of Plaintiff's dispute to BB&T, but Equifax did not. *Id.* ¶¶ 26, 31.

Upon receiving notice of her dispute from Experian and TransUnion, Plaintiff alleges that BB&T did not conduct an independent investigation, but rather verified that the information being reported to the CRAs was consistent with the information that BB&T had previously reported, and did not notate that Plaintiff's account was disputed. *Id.* ¶¶ 32–33. Experian responded to Plaintiff with the results of its investigation of Plaintiff's dispute, but not with a copy of Plaintiff's full consumer file, on or about January 15, 2015, indicating that its reporting of Plaintiff's account was not changed as a result of Plaintiff's dispute. *Id.* ¶¶ 27, 67. Plaintiff alleges that Experian did not independently investigate her dispute, and rather "relied on BB&T's conclusions and parroted the results of BB&T's purported investigation." *Id.*

On January 9, 2015, Trans Union responded to Plaintiff with the result of its investigation of Plaintiff's dispute, and, like Experian, continued to report Plaintiff's mortgage balance as

4

$131,809. *Id.* ¶ 29. Plaintiff alleges that TransUnion, like Experian, did not independently investigate her dispute and relied on BB&T's purported investigation. *Id.* Additionally, included along with TransUnion's investigation results was a copy of Plaintiff's credit file, which revealed that Midland, a debt collection and information management company, *id.* ¶ 4, had obtained a copy of Plaintiff's consumer report from Trans Union on August 22, 2014, *id.* ¶ 30. Plaintiff alleges that she contacted Midland and spoke with an employee who "acknowledge[d] that Midland did not have a reason to obtain her report." *Id.* Plaintiff contends that this action on the part of Midland was part of a broader scheme by Midland to pull individuals' consumer reports in order to identify potential creditors to solicit and offer its debt collection services. *Id.* According to Plaintiff, Trans Union is aware that Midland improperly pulls consumer reports for these purposes and yet has not established any procedures to verify that Midland is obtaining credit reports for permissible purposes. *Id.*

On August 17, 2015, Plaintiff mailed a letter to BB&T offering to settle the dispute. Plaintiff offered to waive any legal claims she had against BB&T in exchange for BB&T agreeing to accept $10,000 in full payment of the debt. *Id.* ¶ 34. Plaintiff indicated in her letter that the remaining outstanding debt was approximately $129,000, but that if she were to retain an attorney and pursue her FCRA claim, her damages would exceed the outstanding balance on the Note. ECF No. 32-3 at 2. Plaintiff included with her letter a copy of a draft complaint setting forth her claims, as well as a check for $10,000 to be drawn from the account of "Metropolitan Legal Team LLC." *Id.* at 3–8.

Just over one week later, on August 30, 2015, Plaintiff submitted a dispute with Equifax indicating that her account balance was incorrect. ECF No. 27 ¶ 36. Plaintiff included with her dispute a copy of her August 17 letter to BB&T and asserted that, because BB&T had retained

her check, it had accepted her payment. *Id.* But on or about September 4, 2015, Plaintiff received a letter from BB&T which was dated August 27, 2015, declining Plaintiff's settlement offer and returning Plaintiff's check. *Id.* ¶ 35. Equifax never responded to Plaintiff's August 30 dispute. *Id.* ¶ 37.

On October 2, 2015, BB&T mailed Plaintiff a billing statement for a total amount of $1,910.24. ECF No. 32-5 at 2. The statement indicated that Plaintiff owed a "past due" amount of $1,005.12, but that $100 of partial payment were being held in suspense,[4] and that no late charges had been assessed. The statement further indicated that Plaintiff's regular monthly payment due was $1,005.12, and noted that the "billing due date" was November 1, 2015, but that the "current due date" was October 1, 2015. *Id.* The total amount due was $1,910.24, and indicated that "[i]f payment is received after 11/16/15, $30.76 late fee will be charged." *Id.*

Plaintiff interpreted the October 2 billing statement as indicating that she had missed a mortgage payment, which Plaintiff alleges was false. ECF No. 27 ¶ 39. Billing records indicate that Plaintiff submitted a payment of $1,005.12 on October 14, 2015, and that another regular payment in the same amount was made on November 13, 2015. ECF No. 32-4 at 2. Plaintiff alleges that she "was incensed" to learn that "she was being accused of missing a payment. And she feared BB&T was reporting her late to the [consumer] reporting agenc[ies]." ECF No. 27 ¶ 40. Plaintiff then "went [through] all her records to see if she could make sense of why BB&T was claiming there was a past due payment," but she found nothing. *Id.* Plaintiff then sent a letter to BB&T requesting that it cease attempting to collect $1,910.24 from her and that it correct its records. *Id.* Plaintiff further alleges that she "decided to verify whether BB&T was illegally

---

[4] The billing statement includes the following notation: "**Important Message Partial payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage." ECF No. 32-5 at 2 (emphasis in original).

attempting to collect any other undue payments or balances" and "[i]n researching her records she discovered that the outstanding principal balance [on her loan] was not $128,558.15 as BB&T claimed" but rather that it was $121,643.91. *Id.* ¶ 41.

Plaintiff sent dispute letters to the CRAs on November 4, 2015, in which she indicated that the correct balance on her loan was $121,643.91 and asked that the bureaus investigate the balance and correctly report it. *Id.* ¶ 42. Plaintiff further requested that if the CRAs were not going to report the balance as $121,643.91, that they include a "statement of dispute" that would read: "The correct balance of this account is $121,643.91." *Id.* Plaintiff alleges that TransUnion, Experian, and Equifax received her dispute on November 7, 9, and 10, 2015, respectively, but that none of them added Plaintiff's requested statement of dispute. Plaintiff further alleges that "[u]pon information and belief," each of the CRAs have furnished Plaintiff's credit report since receiving Plaintiff's November 4, 2015 dispute letter without including Plaintiff's statement of dispute. *Id.* ¶¶ 43–45.

Plaintiff initiated this action in state court on September 8, 2015 alleging various claims against BB&T, Equifax, Experian, and TransUnion. ECF No. 2. Trans Union removed the case to this Court on October 13, 2015. ECF No. 1. After Trans Union and BB&T filed motions to dismiss, ECF Nos. 18 & 22, Plaintiff filed an Amended Complaint on November 19, 2015, adding Midland as a defendant. ECF No. 27. In the Amended Complaint, Plaintiff alleges violations of the FCRA against all Defendants (Counts I, II, III, IV & V), and violations of the MCDCA and MCPA against BB&T (Counts VI & VII).[5] On December 14, 2015, the Court directed Plaintiff to submit a completed summons to serve Midland, ECF No. 34, but Plaintiff has not complied with that Order. Experian and BB&T have moved to dismiss Plaintiff's

---

[5] Plaintiff has mistakenly labeled three separate claims as "Count Two" and two separate claims as "Count Three." *See* ECF No. 27. In this Memorandum Opinion and corresponding Order, the Court refers to Plaintiff's claims by the numerical order in which they appear in the Amended Complaint.

7

Amended Complaint. ECF Nos. 31 & 32. Trans Union and Equifax filed Answers to the

Amended Complaint, ECF Nos. 29 & 30, and Trans Union has filed the presently pending

Motion for Judgment on the Pleadings, ECF No. 44. All of Defendants' motions are now ripe for

review.[6]

## II.   STANDARD OF REVIEW

Experian and BB&T have moved to dismiss Plaintiff's Complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can

be granted. Trans Union, having already filed an Answer to the Amended Complaint, ECF No.

29, has filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules

of Civil Procedure. Pursuant to Rule 12(h)(2)(B), a defendant may assert that a complaint "fail[s]

to state a claim upon which relief can be granted" in a Rule 12(c) motion. Rule 12(c) allows a

party to move for judgment on the pleadings "[a]fter the pleadings are closed" so long as the

motion is brought "early enough not to delay trial." Fed. R. Civ. P. 12(c). In considering a Rule

12(c) motion for failure to state a claim, courts apply "the same standard . . . as for motions made

---

[6] Also pending are two motions to dismiss Plaintiff's original Complaint filed by Trans Union and BB&T, ECF Nos. 18 & 22, and a motion for extension of time to respond to those motions filed by Plaintiff, ECF No. 24. Because Plaintiff filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) within twenty-one days of service of the first motion to dismiss, ECF No. 27, the Court will deny those motions as moot. Additionally, Plaintiff has filed a Motion for Leave to Submit Supplemental Authority, ECF No. 42, namely, a case which was decided after she filed her response in opposition to BB&T's Motion to Dismiss. Plaintiff's Motion, however, is in essence a surreply, in that, not only does Plaintiff call the Court's attention to the recently decided case, she also argued how that case should apply to the case presently before the Court. Although a "party moving for leave to file a surreply must show a need for a surreply," *Todd v. Xoom Energy Maryland, LLC*, No. GJH-15-154, 2016 WL 727108, at *4 (D. Md. Feb. 22, 2016), here, BB&T has not opposed Plaintiff's Motion on the ground that Plaintiff has not shown a need for a surreply, but rather has argued on the merits why the Court should not consider the authority Plaintiff cited. Because Plaintiff's Motion is therefore essentially unopposed, the Court will grant this motion. Finally, Plaintiff has filed a Motion to Strike, ECF No. 46, Experian's Notice of Supplemental Authority, in which Experian called the Court's attention to a case decided after its reply brief in support of its Motion to Dismiss was filed, ECF No. 43. Like Plaintiff's Motion for Leave to File Supplemental Authority, Experian's Notice is more appropriately construed as a motion for leave to file a surreply insofar as Experian not only called the Court's attention to the recently decided case, but also explained how that decision should impact the Court's decision in this case. Plaintiff's Motion to Strike, in turn, also addresses only the merits of whether the supplemental authority should impact the result in this case, rather than arguing why Experian's Notice should be struck. The Court will therefore deny Plaintiff's Motion to Strike, and notes that it has considered each Party's respective arguments regarding the applicability *vel non* of the supplemental authority.

pursuant to Rule 12(b)(6)." *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d

401, 406 (4th Cir. 2002); *see also Goldstein v. F.D.I.C.*, No. CIV.A. ELH-11-1604, 2014 WL

69882, at \*9 (D. Md. Jan. 8, 2014) ("[T]he standard of review with regard to a Rule 12(c) motion

is the same as that for a motion under Rule 12(b)(6).").

When deciding a motion for failure to state a claim under Rule 12(b)(6) or 12(c), a court

"must accept as true all of the factual allegations contained in the complaint," and "draw all

reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*

*v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks

omitted). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). But to survive a motion to dismiss invoking Rule 12(b)(6) or a motion for

judgment on the pleadings under Rule 12(c), "a complaint must contain sufficient factual matter,

accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual

allegations must be more than "labels and conclusions . . . . Factual allegations must be enough

to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also* 5 C.

Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004) ("[T]he

pleading must contain something more . . . than . . . a statement of facts that merely creates a

suspicion [of] a legally cognizable right of action"). A complaint will not survive Rule 12(b)(6)

or Rule 12(c) review where it contains "naked assertion[s]" devoid of "further factual

enhancement." *Twombly*, 550 U.S. at 557. "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). Additionally, although pleadings of self-represented litigants must be liberally construed, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), liberal construction does not give the court license to ignore a clear failure to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990).

## III.    DISCUSSION

### A.  Plaintiff's FCRA Claims

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citations omitted). Pursuant to 15 U.S.C. §§ 1681n & 1681o, individuals may file suit against CRAs, as well as individuals that furnish information to CRAs, for FCRA violations. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Saunders v. Branch Banking & Tr. Co. Of Va.*, 526 F.3d 142, 147–48 (4th Cir. 2008). Plaintiff alleges that Defendants violated various provisions of the FCRA, including, *inter alia*, that BB&T violated 15 U.S.C. § 1681s-2(b) (Count I), Trans Union violated 15 U.S.C. § 1681e (Count III), Experian and Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) (Count V), and Experian violated 15 U.S.C. § 1681i(a)(6)(B)(ii) (Count IV). The Court will address each claim in turn.

### 1.  Plaintiff's § 1681s-2(b) Claim Against BB&T (Count I)

Plaintiff first claims that BB&T willfully and negligently failed to conduct a reasonable investigation of Plaintiff's dispute regarding the accuracy of her loan balance when it received

10

notice of such dispute in violation of 15 U.S.C. § 1681s-2(b). ECF No. 27 ¶¶ 47–51. "Section 1681s-2(b) outlines the duties a furnisher of information has when given notice of a dispute concerning inaccurately reported information." *Alston v. Cavalry Portfolio Servs., LLC*, No. 8:12-CV-03589-AW, 2013 WL 665036, at *4 (D. Md. Feb. 22, 2013) (citation and internal quotation marks omitted). Specifically, once a furnisher of information, such as a mortgage lender or credit card issuer, is given notice of dispute as to the completeness or accuracy of any information provided to a CRA, the furnisher shall, *inter alia*, "conduct an investigation with respect to the disputed information," "review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) of this title," and "report the results of the investigation to the [CRA] . . . ." 15 U.S.C. § 1681s-2(b)(1)(A)–(C). "Thus, to bring a claim under § 1681s-2(b), a plaintiff must establish three elements: (1) that he or she notified the [CRA] of the disputed information, (2) that the [CRA] notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Cavalry Portfolio*, 2013 WL 665036, at *4 (citation and internal quotation marks omitted).

With respect to Plaintiff's claim that BB&T willfully violated § 1681s-2(b), BB&T argues, relying on *Akalwadi v. Risk Management Alternatives, Inc.*, 336 F. Supp. 2d 492 (D. Md. 2004), that Plaintiff's claim cannot survive dismissal because the Amended Complaint includes facts demonstrating that BB&T conducted at least some form of investigation of her dispute, *see* ECF No. 32-1 at 11, namely, that BB&T "verified that the information being reported [to the CRA] was consistent with the information that BB&T previously reported," ECF No. 27 ¶ 32. According to BB&T, "[a] willful violation [of § 1681s-2(b)] requires a complete failure to investigate, which is not the case here, nor is it alleged." ECF No. 32-1 at 11. Plaintiff disagrees

and contends that a willful violation of § 1681s-2(b) occurs where a furnisher of information

fails to conduct a *reasonable* investigation. *See* ECF No. 35 at 1–2.

In the context of a claim of negligent violation of § 1681s-2(b), the United States Court

of Appeals for the Fourth Circuit determined that § 1681s-2(b) imposes a reasonableness

standard on a furnisher's obligation to conduct an investigation upon receiving notice of a

dispute. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004). As the Fourth

Circuit explained, "[t]he key term at issue here, 'investigation,' is defined as '[a] detailed inquiry

or systematic examination.'" *Id.* at 430 (quoting Am. Heritage Dictionary 920 (4th ed. 2000)).

Indeed, "[i]t would make little sense to conclude that, in creating a system intended to give

consumers a means to dispute—and, ultimately, correct—inaccurate information on their credit

reports, Congress used the term 'investigation' to include superficial, *un*reasonable inquiries by

creditors." *Id.* at 430–31 (emphasis in original). The Fourth Circuit therefore held that "§ 1681s–

2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting

agency, to conduct a reasonable investigation of their records to determine whether the disputed

information can be verified." *Id.* at 431.

In *Akalwadi*, however, which considered claims of willful, not only negligent, violations

of § 1681s-2(b), the court, while recognizing that "[n]othing in the language of the FCRA

indicates the level of investigation required under § 1681s-2(b)(1)," 336 F. Supp. 2d at 510,

explained that "[t]o prevail on a willful noncompliance claim and recover punitive damages, [a

plaintiff] must show that [the defendant] knowingly and intentionally *did not investigate* the

disputed debt in conscious disregard for his rights," *id.* at 511 (emphasis added). But in denying

the defendant's motion for summary judgment, the court went on to state that there was a

12

genuine dispute of material fact as to "whether [the defendant] *willfully* failed to conduct a

*reasonable* investigation . . . ." *Id.* (emphasis added).

Notably, in a recent case in this district, Judge Paul W. Grimm rejected the argument that

BB&T raises here. *See Letren v. Wells Fargo Bank, N.A.*, No. PWG-15-614, 2016 WL 560801,

at *3 (D. Md. Feb. 12, 2016). In *Letren*, Judge Grimm explained:

> [I]t . . . is true that *Johnson* did not address claims of willful violations, and
> *Akalwadi*, which did address willful violations, held: "To prevail on a willful
> noncompliance claim and recover punitive damages, [plaintiff] must show that
> [defendant] knowingly and intentionally *did not investigate* the disputed debt in
> conscious disregard for his rights." 336 F. Supp. 2d at 511 (emphasis added). But
> in *Akalwadi*, this Court also observed that, while "[n]othing in the language of the
> FCRA indicates the level of investigation required under § 1681s-2(b)(1)," the
> *Johnson* Court imposed a "'reasonable investigation'" requirement. *Id.* at 510
> (quoting *Johnson*, 357 F.3d at 431); *Davenport v. Sallie Mae, Inc.*, No. CIV. PJM
> 12-1475, 2015 WL 3604820, at *4 (D. Md. June 5, 2015) (stating that, "to bring a
> claim under § 1681s-2(b) of the FCRA, [plaintiff] must establish: . . . (3) that [the
> furnisher] then failed to investigate and modify the inaccurate information," but
> also stating that the question is "whether [the] furnisher conducted a reasonable
> investigation" (emphases added)), *aff'd*, 623 F. App'x 94 (4th Cir. 2015). This
> Court stated:
>
> > In determining whether a furnisher's investigation is reasonable, the fact-
> > finder should weigh "the cost of verifying the accuracy of the information
> > versus the possible harm of reporting inaccurate information." *See
> > Johnson*, 357 F.3d at 432. It is generally a question of fact for the jury as
> > to whether a reasonable investigation was conducted.
>
> *Akalwadi*, 336 F. Supp. 2d at 510. Thus, a willful violation claim can be based on
> an unreasonable investigation, which is tantamount to a failure to investigate.

*Id.* This Court finds *Letren*'s reasoning persuasive. Moreover, BB&T has not argued that there is

any reason to interpret the word "investigation" in the same statutory provision differently

depending on whether a plaintiff is alleging a willful or negligent violation of § 1681s-2(b).

Accordingly, this Court concludes, in line with *Johnson* and *Letren*, that a complaint survives

dismissal on a claim for willful violation of § 1681s-2(b) if a plaintiff alleges facts demonstrating

that the furnisher did not conduct a reasonable investigation.

BB&T does not argue that Plaintiff fails to state a claim with respect to whether BB&T conducted a reasonable investigation. *See* ECF No. 32-1 at 9–11. Indeed, Plaintiff's allegation that, rather than perform "[a] detailed inquiry or systematic examination," *Johnson*, 357 F.3d at 430 (citation and internal quotation marks omitted), BB&T merely "verified that the information being reported was consistent with information that BB&T previously reported," ECF No. 27 ¶ 32, is sufficient to state a claim for relief. *Cf. Hinkle v. Midland Credit Mgmt., Inc.*, --- F. 3d. ---, No. 15-10398, 2016 WL 3672112, at *8 (11th Cir. July 11, 2016) (adopting "reasonable investigation" standard for claims arising under § 1681s-2(b) and rejecting defendant's argument that plaintiff could not survive summary judgment on claim of willful violation where evidence showed that defendant adopted a system to review disputes "with reckless disregard for the fact that it would result in perfunctory review in contravention of the FCRA"). Thus, BB&T's motion to dismiss Plaintiff's claim of willful violation of § 1681s-2(b) must be denied.

Plaintiff's claim of negligent violation of § 1681s-2(b), however, must be dismissed. To prevail on a claim for negligent violation, a plaintiff must sufficiently allege "actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1); *see also Letren*, 2016 WL 560801, at *3 (citations omitted) ("[T]o state a claim for negligent violation of the FCRA, Letren must allege actual damages."); *Buechler v. Keyco, Inc.*, No. WDQ-09-2948, 2010 WL 1664226, at *2 (D. Md. Apr. 22, 2010) (stating that a plaintiff who did not allege actual damages could only recover for a willful violation of the FCRA, by proving willfulness).

Here, the Amended Complaint contains no facts alleging that Plaintiff sustained any actual damages as a result of any alleged violation of § 1681s-2(b). Rather, Plaintiff only conclusively alleges that she is "seeking actual damages in the amount of $10,000 for [BB&T's] negligent and willful violations of the FCRA . . . ." ECF No. 27 ¶ 51. Notably, Plaintiff has not

14

responded to BB&T's argument that her claim for negligent violation must be dismissed for failure to allege actual damages. *See* ECF No. 35; *see also Sheet Metal Workers' Local Union No. 100 Wash., D.C. Area Pension Fund v. W. Sur. Co.*, --- F. Supp. 3d ---, No. GJH-15-1175, 2016 WL 2903553, at *10 n.12 (D. Md. May 17, 2016) (noting that party concedes issue by failing to respond to argument raised in motion to dismiss). Accordingly, the Court will grant BB&T's motion to dismiss Plaintiff's claim of negligent violation of the FCRA.

### 2.  Plaintiff's § 1681e(a) Claim Against Trans Union (Count III)

Plaintiff next alleges that Trans Union violated 15 U.S.C. § 1681e(a) by failing to establish or follow reasonable procedures to prevent the disclosure of credit information for impermissible purposes. ECF No. 27 ¶¶ 59–65. Pursuant to § 1681e, CRAs are required to maintain reasonable procedures designed to ensure that individuals requesting consumer reports are doing so for a proscribed permissible purpose, such as in connection with a credit transaction, for employment purposes, or in connection with the underwriting of insurance. *See* 15 U.S.C. § 1681b. Specifically, "[t]hese procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose" and "[n]o [CRA] may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title." 15 U.S.C. § 1681e(a).

In order to state a claim for violation of the "reasonable procedures" requirement of § 1681e(a), "'a plaintiff . . . must first show that the reporting agency released the report in violation of § 1681b.'" *Harris v. Database Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 517 (D. Md. 2009) (quoting *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000)). "[I]f the [CRA] has reason to believe that the user had a permissible purpose in obtaining the

[consumer] report, there is no FCRA violation." *Id.* at 515 (citation and internal quotation marks omitted). A CRA generally has "reason to believe" that a consumer report is being accessed for a permissible purpose "when the subscriber had certified such limited usage, the primary purpose of the subscriber's business involved accessing reports for a permissible purpose, and the agency was unaware of any impermissible use by the subscriber." *Id.* But "[t]he fact that a consumer report is furnished for an impermissible purpose . . . does not result in automatic liability. Liability is imposed only when the [CRA] either willfully or negligently fails to maintain reasonable procedures to avoid violations of . . . § 1681b." *Pietrafesa v. First Am. Real Estate Info. Servs., Inc.*, No. 1:05-CV-1450, 2007 WL 710197, at *3 (N.D.N.Y. Mar. 6, 2007) (quoting *Dobson v. Holloway*, 828 F.Supp. 975, 977 (M.D. Ga. 1993)).

Here, Plaintiff alleges that Midland obtained Plaintiff's consumer report from Trans Union on August 22, 2014, and Midland later acknowledged to Plaintiff that it did not have a reason to obtain her report. ECF No. 27 ¶ 30. Plaintiff further alleges that Midland frequently misrepresents its purpose in obtaining a consumer report and does so to find potential creditors to solicit and offer its debt collection services. *Id.* According to the Amended Complaint, "Trans Union knows that Midland often obtains consumer reports for purposes of soliciting creditors" and that, although Midland has in the past certified that it was obtaining a report to collect a debt, it in fact was obtaining consumer reports to solicit business. *Id.* Plaintiff alleges that, despite its knowledge of Midland's illegal practices, "Trans Union has not established any additional procedures to verify that it did have a debt for the Plaintiff and was not simply obtaining her [consumer] report to solicit a creditor . . . for some impermissible purpose." *Id.*

Construing the facts in the light most favorable to Plaintiff, as the Court must upon a motion for judgment on the pleadings, the facts alleged support an inference that Midland

16

obtained Plaintiff's report in violation of § 1681b. Obtaining a consumer report to solicit

business or obtaining one for no purpose at all, *see* ECF No. 27 ¶ 30, is not a "permissible

purpose" under § 1681b. *See* 15 U.S.C. § 1681b(a) (emphasis added) ("any [CRA] may furnish a

consumer report under the following circumstances *and no other*"). Although Plaintiff has not

alleged that Trans Union wholly failed to require that Midland certify that its purpose for

obtaining Plaintiff's report was permissible, based on the facts alleged in the Amended

Complaint, even assuming Trans Union required such certification, any facially valid

certification would have been insufficient to protect against the possibility that Midland did not

have a proper purpose in obtaining a copy of Plaintiff's consumer report. These facts, if true, are

sufficient to state a claim for violation of § 1681e. *Cf. Levine v. World Fin. Network Nat. Bank*,

437 F.3d 1118, 1121 (11th Cir. 2006) (rejecting argument that CRA's "grave responsibility for

safeguarding [a consumer's] confidential information extends only so far as a former creditor's

facially valid request for a credit report, notwithstanding any reasonable grounds to believe that

the request is instead made for an impermissible purpose"). Accordingly, Trans Union's Motion

for Judgment on the Pleadings must be denied with respect to this claim.[7]

### 3. Plaintiff's § 1681i(a)(1)(A) Claim Against Experian and Trans Union (Count V)

Plaintiff next alleges that both Experian and Trans Union violated 15 U.S.C. § 1681i(a)

of the FCRA, which requires that a CRA, upon receiving notice that a consumer is disputing

information in a consumer report, "conduct a reasonable reinvestigation to determine whether the

disputed information is inaccurate," and to record the current status of the disputed information

---

[7] In her opposition to Trans Union's Motion, Plaintiff argued that she is entitled to costs in opposing that motion pursuant to 28 U.S.C. § 1927 because Trans Union "disingenuously cite[d] to cases that were disposed of on a motion for summary judgment." ECF No. 47 at 8. Although such citations may not be dispositive of the issues presently pending before the Court, Trans Union's reliance on such cases did not "unreasonably and vexatiously" multiply the proceedings in this Court. *See* 28 U.S.C. § 1927. Accordingly, Plaintiff's request for costs is denied.

within thirty days of receiving notice of the dispute.[8] 15 U.S.C. § 1681i(a)(1)(A); *see also* ECF No. 27 ¶¶ 70–78. Within five days of completing such a reinvestigation, the CRA must notify the consumer in writing of the results of such investigation. 15 U.S.C. § 1681i(a)(6)(A). Then, "[i]f the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute." 15 U.S.C. § 1681i(b).

To state a claim for violation of § 1681i, a plaintiff must allege "(1) that [s]he disputed the accuracy of an item in . . . her credit file; (2) the CRA failed to conduct a reasonable reinvestigation; and (3) that a reasonable reinvestigation by the CRA could have uncovered the inaccuracy." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *3 (E.D. Va. Mar. 18, 2011) (citing *Cahlin v. Gen Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991)). The reasonableness of a reinvestigation under these circumstances depends on the facts of each case, *see id.* at *5, but multiple courts have explained that a CRA has no obligation to resolve legal disputes between a consumer and a creditor. *See, e.g.*, *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (noting that "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims" and rejecting plaintiff's claim that CRAs were required to consider consumer's legal defenses to payment because "credit reporting agencies are not tribunals" and are "ill equipped to adjudicate contract disputes"); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (affirming summary judgment for defendant on § 1681i claim where what plaintiff was "attacking is the mortgage's validity" because

---

[8] Plaintiff also summarily alleges that Experian and Trans Union violated this provision of the FCRA by "failing to provide [BB&T] all relevant information regarding . . . Plaintiff's dispute." ECF No. 27 ¶ 75. Section 1681i(a)(2)(A) does require CRAs to provide the furnisher of information on a consumer's credit report with information regarding the dispute, but Plaintiff has not alleged any *facts* indicating when Experian or Trans Union sent such information or that they failed to do so. Thus, to the extent Plaintiff alleges an additional claim for violation of § 1681i(a)(2)(A), that claim must be dismissed.

determination of "[w]hether the mortgage is valid turns on questions that can only be resolved by a court of law"); *Brill v. Trans Union LLC*, No. 15-CV-300-SLC, 2015 WL 9095103, at *3 (W.D. Wis. Dec. 16, 2015) (granting motion to dismiss § 1681i claim where plaintiff alleged that CRA continued to report lease extension on which plaintiff alleged his signature had been forged because whether signature was a forgery was a "legal question that Trans Union could not resolve through reinvestigation"); *see also Saunders*, 526 F.3d at 150 ("Claims brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit . . . .").

According to the Amended Complaint, in her December 29, 2014 dispute letter, Plaintiff indicated that the balance of her mortgage account was being reported inaccurately and that, rather than a balance of $131,809, her report should show a balance of $129,463.40. ECF No. 27 ¶ 24. Plaintiff explained that the "cause of the error stems from BB&T's assessment of interest for the months [of] July [through] December 2014" and that, according to Plaintiff, no interest should have been assessed during that period. *Id.* ¶ 25. Such a dispute, however, is one which CRAs such as Experian and Trans Union are ill equipped to resolve. Plaintiff's dispute concerned whether BB&T could legally continue to assess interest on her loan, an issue that neither Experian nor Trans Union had any power to settle.

With respect to Plaintiff's November 4, 2015 dispute letter, although Plaintiff alleges that she again disputed the reported balance of her mortgage account to the CRAs and that they each then failed to include her statement of dispute as to that account, Plaintiff filed the Amended Complaint before the statutory time allotted for the CRAs to complete their reinvestigation expired. *See* ECF No. 27 ¶¶ 42–45. Plaintiff sent dispute letters to the CRAs on November 4, 2015, in which she indicated that the correct balance of her loan was $121,643.91 and asked that

the bureaus investigate the balance and correctly report it. *Id.* ¶ 42. Plaintiff further requested that

if the CRAs were not going to report the balance as $121,643.91, that they include a "statement

of dispute" that would read: "The correct balance of this account is $121,643.91." *Id.* Plaintiff

alleges that TransUnion, Experian, and Equifax received her dispute on November 7, 9, and 10,

2015, respectively, *id.* ¶¶ 43–45, but she filed the Amended Complaint in this case on November

19, 2015, before the thirty-day timeline expired for the CRAs to complete their reinvestigation.

*See* 15 U.S.C. § 1681i(a)(1)(A). Thus, to the extent Plaintiff alleges violations of § 1681i with

respect to her November 4, 2015 dispute letter, such claims must be dismissed.

    If, however, the CRAs still had not resolved Plaintiff's dispute and did not add Plaintiff's

statement of dispute to her file after the statutorily proscribed time limit, Plaintiff may be able to

state a claim in this regard. Accordingly, Plaintiff will be given the opportunity to amend the

Amended Complaint to, if possible, allege additional facts that would support such a claim. *See*

*Hinks v. Bd. of Educ. of Harford Cty.*, No. CIV. WDQ-09-1672, 2010 WL 5087598, at *2 (D.

Md. Dec. 7, 2010) (citation and internal quotation marks omitted) ("When a plaintiff's complaint

fails to state a claim, [s]he should generally be given a chance to amend the complaint . . . before

the action is dismissed with prejudice.").

### 4. Plaintiff's § 1681i(a)(6)(B)(ii) Claim Against Experian (Count IV)

    Plaintiff next claims that Experian violated the FCRA by failing to provide a copy of her

full consumer file after completing its reinvestigation of her December 29, 2014 dispute. ECF

No. 27 ¶¶ 28, 66–69. Section 1681i(a)(6)(A) of the FCRA requires that a CRA provide written

notice to a consumer of the results of a reinvestigation within five business days after the

completion of the reinvestigation. As part of that notice, the CRA must include "a consumer

report that is based upon the consumer's file as that file is revised as a result of the reinvestigation . . . ." 15 U.S.C. § 1681i(a)(6)(B)(ii).

The FCRA defines "consumer report" as "any written, oral, or other communication of any information by a [CRA] bearing on a consumer's credit worthiness, credit standing, [or] credit capacity . . . which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--(A) credit or insurance . . . ;(B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d). In *Nunnally v. Equifax Information Services, LLC*, 451 F.3d 768 (11th Cir. 2006), the United States Court of Appeals for the Eleventh Circuit rejected a claim like the one that Plaintiff raises here, explaining that "[t]he 'consumer report' referenced in section 1681i(a)(6)(B)(ii) is not the 'consumer's file' because that section states that the required 'consumer report' is 'based upon the consumer's file.'" *Id.* at 772–73. The Eleventh Circuit explained that the purpose of this provision is to "highlight[] the changes made to [the consumer's] files and provide[] a simple method for the [consumer] to determine whether each of their contested items had been addressed by [the CRA]." *Id.* at 776. The Eleventh Circuit went on to conclude that, in that case, "Equifax satisfied the 'consumer report' requirement when it informed the [plaintiffs] of the changes it had made to their respective files as a result of the reinvestigation," despite not providing the plaintiffs with copies of their complete consumer files after completing reinvestigation. *Id.*

Here, Plaintiff alleges that Experian responded to Plaintiff's December 29, 2014 dispute letter on or about January 15, 2015 and "stated that the BB&T tradeline was not changed as a result of the processing of Plaintiff's dispute." ECF No. 27 ¶ 27. This notification was sufficient for Experian to satisfy its obligation to provide Plaintiff with "a consumer report that is based

upon the consumer's file as that file is revised as a result of the reinvestigation . . . ." 15 U.S.C. § 1681i(a)(6)(B). Thus, Plaintiff's claim against Experian for violation of this provision must be dismissed.

### B. Plaintiff's MCDCA and MCPA Claims Against BB&T (Counts VI & VII)

The MCDCA prohibits debt collectors from, *inter alia*, claiming "to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). Similarly, the MCPA, which prohibits unfair and deceptive trade practices, provides for a derivative cause of action in that any violation of § 14-202 of the MCDCA constitutes an unfair or deceptive trade practice in Maryland. Md. Code Ann., Com. Law § 13-301(14)(iii).

Plaintiff's MCDCA and MCPA claims against BB&T are predicated on her allegation that BB&T wrongfully attempted to collect $1,910.24, rather than her normal billing amount of $1,005.12, on October 2, 2015. ECF No. 27 ¶¶ 79–86. Specifically, Plaintiff alleges that "[i]n October 2015 BB&T mailed [her] a mortgage billing statement that stated the amount due for November 1, 2015 would be $1,910.24" but that her "regular monthly payment is only $1,005.12." *Id.* ¶ 38. Plaintiff further alleges that she "has never missed a mortgage payment." *Id.* ¶ 39.

BB&T argues that these claims must be dismissed because the October 2, 2015 billing statement sent to Plaintiff accurately stated the amount due. Specifically, because the Note required that Plaintiff pay her monthly payments by the first day of each month, but that late fees would not be assessed unless payment is not received by the fifteenth day of each month, ECF No. 32-2 at 2–3, BB&T argues that the October 2, 2015 billing statement accurately reflected that Plaintiff's October 2015 payment had not yet been received, but that her regular monthly payment of $1,005.12 would also be due by November 1, 2015. ECF No. 32-5 at 2. Plaintiff,

seemingly confused by the difference between default and the imposition of late fees, argues that it is "asinine to suggest that Plaintiff would become delinquent by October [2], 2015 . . . when the . . . Note provides that the borrower may have 15 calendar days to make the mortgage payment before the payment is considered late." ECF No. 35 at 3. Based on the terms of the Note, ECF No. 32-2 at 2–3, the contents of the October 2, 2015 billing statement, ECF No. 32-5 at 2, and the record of Plaintiff's payment history indicating that Plaintiff remitted her normal monthly payment for that month on October 14, 2015, ECF No. 32-4 at 2, it is evident that the October 2, 2015 billing statement was accurate.[9] *See Makowski v. Bovis Lend Lease, Inc.*, No. CIV.A. RDB 10-1844, 2011 WL 1045635, at *2 (D. Md. Mar. 17, 2011) (citing Fare Deals Ltd. v. World Choice Travel.Com, Inc., 180 F. Supp. 2d 678, 683 (D. Md. 2001)) ("To the extent the allegations in the complaint conflict with those in such integral and authentic documents, the exhibits or documents prevail."). Plaintiff's MCDCA and MCPA claims must therefore be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, BB&T's Motion to Dismiss, ECF No. 32, is granted, in part, and denied, in part; Experian's Motion to Dismiss, ECF No. 31, is granted; and Trans Unions' Motion for Judgment on the Pleadings, ECF No. 49, is granted, in part, and denied, in part. Accordingly, Counts IV, V, VI, and VII are dismissed, and Count I is dismissed in part. Plaintiff will be given the opportunity to amend her claim in Count V with respect to the November 4,

---

[9] In support of its Motion to Dismiss, BB&T has also submitted a billing statement dated October 14, 2015, which reflects the updated balance of Plaintiff's account after her October 14 payment. ECF No. 32-6 at 2. Plaintiff challenges BB&T's reliance on this statement, however, because it is not referenced in the Amended Complaint. ECF No. 35 at 4; *see also Am. Chiropractic*, 367 F.3d at 234 ("[A] court may consider [an external document] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint . . . ."). The Court need not consider this document, however, because the October 2, 2015 billing statement and Plaintiff's payment history, which are both "integral to and explicitly relied on" in the Amended Complaint, are sufficient to resolve BB&T's motion.

2015 dispute letter sent to the CRAs. Experian's and Trans Union's motions to dismiss the original Complaint, ECF Nos. 18 & 22, as well as Plaintiff's motion for extension of time to respond to those motions, ECF No. 24, are denied as moot. Plaintiff's Motion for Leave to Submit Supplemental Authority, construed as a Motion for Leave to File a Surreply, ECF No. 42, is granted, and Plaintiff's Motion to Strike, ECF No. 46, is denied.

Finally, in her Amended Complaint, Plaintiff added a claim against Midland for violation of the FCRA. *See* ECF No. 27 ¶¶ 52–58. On December 14, 2015, the Court Ordered that Plaintiff submit a completed summons to the Clerk of the Court to serve Midland in this action. Plaintiff failed to comply with that Order, and Midland has not yet been served with process. Accordingly, the Court will Order that Plaintiff show cause within fourteen days of the entry of this Memorandum Opinion and Order as to why Midland should not be dismissed from this action.

A separate Order follows.

Dated: <u>August   26  </u>, 2016

GEORGE J. HAZEL
United States District Judge