**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | |
|---|---|
| YVONNE R. ALSTON, | * |
| Plaintiff, | * Case No.: GJH-15-3100 |
| v. | * |
| BRANCH BANKING & TRUST COMPANY, *et al.*, | * |
| Defendants. | * |

**MEMORANDUM OPINION**

*Pro se* plaintiff Yvonne R. Alston filed suit against Defendant Trans Union, LLC ("Trans Union") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*[1] The Court either dismissed each claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or entered summary judgment in Trans Union's favor. *See* ECF Nos. 51, 78. Presently pending before the Court is Trans Union's Motion for Attorneys' Fees. ECF No. 80. No hearing is necessary to resolve the motion. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Trans Union's Motion is granted, in part, and Trans Union is awarded attorneys' fees in the amount of $6,634.56.

---

[1] Plaintiff also brought claims against Defendants Branch Banking and Trust Company ("BB&T"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Midland Credit Management, Inc. ("Midland") under the Fair Credit Reporting Act, as well as the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq. See* ECF No. 27; *see also* ECF Nos. 50, 57, 68, and 76 (adjudicating claims against all defendants).

1

## I. BACKGROUND[2]

### A. Factual Background

Alston's complaint stems from an initial dispute with BB&T whereby Alston, on May 31, 2014, requested a payoff statement from BB&T for the mortgage refinance loan on her primary residence (the "Note"). ECF No. 27 ¶¶ 8–9. On June 4, 2014, BB&T sent Alston a payoff statement, a notice of transfer of servicing, and a copy of the Note. *Id.* ¶ 12. According to Alston, the Note sent in that correspondence "was not certified as a true and accurate copy." *Id.* ¶ 13. Following additional rounds of correspondence, Alston stated that BB&T failed to verify that it was the holder of the Note and, therefore, should have ceased assessing interest on her loan. Alston demanded that BB&T apply her mortgage payments submitted from June 2014 through December 2014 to her principal balance only. *Id.* ¶ 22. On January 4, 2015, BB&T ultimately provided Alston with a payoff statement which, contrary to Alston's demand, directed a portion of her monthly payments to the interest due on the Note. *Id.* ¶ 23.

Alston then sent a dispute letter to three consumer reporting agencies ("CRAs"), Equifax, Experian, and Trans Union, in which she stated that the balance on her mortgage account was incorrect. According to Alston, rather than a balance of $131,809, her report should have shown a balance of $129,463.40 to reflect application of her June 2014 through December 2014 mortgage payments to the principal balance only. *Id.* ¶ 24. Alston asked that the CRAs "investigate whether [Alston] attempted to pay the debt in full and whether BB&T provided the necessary documentation" for her to complete the payoff. *Id.*

On January 9, 2015, Trans Union provided Alston with the result of its investigation of her dispute, and continued to report Alston's mortgage balance as $131,809. *Id.* ¶ 29. Alston

---

[2] The complete factual and procedural background, as set forth in Alston's Amended Complaint, is detailed in this Court's August 26, 2016 memorandum opinion, ECF No. 50. Only topics relevant to the pending motion are repeated herein.

alleged that Trans Union did not independently investigate her dispute but instead relied on BB&T's purportedly inadequate investigation. *Id.* Trans Union provided Alston with a copy of her credit file, which revealed that Midland, a debt collection and information management company, *id.* ¶ 4, had obtained a copy of her consumer report from Trans Union on August 22, 2014. *Id.* ¶ 30. Alston alleged that she contacted Midland and spoke with an employee who "acknowledge[d] that Midland did not have a reason to obtain her report." *Id.* Alston contended that Midland obtained her report as part of a scheme to pull individual consumer reports in order to identify potential creditors to solicit and offer its debt collection services. *Id.* According to Alston, Trans Union was aware that Midland improperly pulled consumer reports for these purposes but had not established any procedural safeguards to prevent such conduct. *Id.* Finally, on November 4, 2015, Alston sent another dispute letter to Trans Union, indicating that the balance of her mortgage account was still inaccurate and should be reported as $121,643.91. *Id.* ¶ 42.

### B. Procedural Background

Alston initiated this action in State Court on September 8, 2015, and Trans Union removed the case to this Court on October 13, 2015. ECF No. 1. Alston alleged that Trans Union failed to establish or follow reasonable procedures to avoid the disclosure of her credit information to Midland for impermissible purposes, in violation of § 1681(e)(a) (Count III), and failed to conduct a reasonable investigation into her dispute with BB&T and correct her credit report accordingly, in violation of § 1681i(a) (Count V). *See* ECF No. 27.

Trans Union moved for Judgment on the Pleadings, ECF No. 44, which the Court granted, in part. ECF No. 50. Regarding Count III, the Court denied Trans Union's motion, holding that the facts alleged by Plaintiff, and construed in her favor, supported an inference that

Trans Union failed to establish sufficient procedures to ensure that it did not provide Plaintiff's credit history to debt collectors, like Midland, for impermissible purposes. *Id.* at 15–17. Regarding Count V, the Court found that Plaintiff's dispute with BB&T was a *legal* dispute to which Trans Union had no obligation to resolve and dismissed the claim as an impermissible collateral attack on the legal validity of her debts. *Id.* at 18. The Court also dismissed Plaintiff's claim related to Trans Union's failure to investigate her November 2015 dispute letter because Plaintiff had filed her Amended Complaint before the thirty-day timeline expired for Trans Union to complete its investigation. *Id.* at 19.

Thereafter, Plaintiff moved to Alter or Amend the Court's Order on Count V, alleging that the Order "contains a clear error of law," ECF No. 67, and Trans Union moved for Summary Judgment on Count III, ECF No. 71-1. Regarding Count V, the Court found that Plaintiff's motion was improperly styled as a motion pursuant to Federal Rule of Civil Procedure 59(e) because the Court's Order was not a final judgment and denied the motion as an untimely without assessing the merits of her underlying argument. ECF No. 77 at 6–8. Notably, the Court stated that Plaintiff's inability to file a Rule 59(e) motion was clearly laid out by Judge Chuang in *Letren v. Experian Info Solutions, Inc.*, No. TDC-14-3957 (D. Md. Aug. 1, 2016) in a case filed by Plaintiff's daughter, Candace Alston, who resides at Plaintiff's address. *See Alston v. Branch Banking & Trust Co.*, No. GJH-15-3100, 2017 WL 4124231, at * 3, n.6 (D. Md. Sept. 15, 2017).

Regarding Count III, the Court granted summary judgment in Trans Union's favor. The Court found that because Plaintiff had failed to comply with the Court's Discovery Order, ECF No. 62, participate in discovery, and respond to Trans Union's request for admission, she had, as a matter of law, admitted that Trans Union's credit reporting procedures were adequate and

Trans Union did not violate § 1681(e)(a). ECF No. 77 at 8–11. While Plaintiff did not explain her failure to participate in discovery or offer any evidence in support of the allegations in her Amended Complaint, Plaintiff opposed Trans Union's motion by unsuccessfully arguing that Trans Union failed to notify her of its intent to file a motion for summary judgment as required by Local Rule 105.2(c). ECF No. 74.

## II. DISCUSSION

The FCRA provides that the Court may award attorneys' fees to the prevailing party if the opposing party makes a filing in bad faith or for the purpose of harassment:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

*See* FCRA, §§ 1681n(c), o(b). "The term 'bad faith,' as it is ordinarily used in the attorney's fee context, requires a showing either that the party subjectively acted in bad faith—knowing that he had no viable claim—or that he filed an action or paper that was frivolous, unreasonable, or without foundation." *Ryan v. Trans Union Corp.*, No. 99 C 216, 2001 WL 185182, at *5 (N.D. Ill. Feb. 26, 2001) (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). In considering whether a filing is made in bad faith, the court will focus on the party's mental state at the time of the filing, regardless of whether the filing turned out to be baseless. *See Letren v. Trans Union, LLC*, No. PX 15-3361, 2017 WL 4098743, at *1, n.1 (D. Md. Sept. 15, 2017) (citing *Rogers v. Johnson-Norman*, 514 F. Supp. 2d 50, 52 (D.D.C. 2007)).

At the outset, the Court recognizes that Alston is not a normal *pro se* litigant proceeding without assistance of counsel. She and her family have filed a number of FCRA actions against various creditors and CRAs. *See Alston v. Branch Banking & Trust Co.*, No. GJH-15-3100, 2016

WL 4521651, at *1, n.1 (D. Md. Aug. 26, 2016) ("Plaintiff's filings in this action appear to have been drafted by an individual with some legal training, and her claims are similar to multiple other cases that have been filed in this Court by Plaintiff and other members of her family."). As highlighted by Judge Chasanow, Thomas Alston has filed a number of FCRA cases in this Court, along with "numerous, additional and virtually identical cases, [] filed by persons who appear to be Mr. Alston's mother, Yvonne Alston, sister, Candace Alston, sister, Kimberly Alston, and brother, Jonathan Alston, all of whom who use the identical address utilized by Thomas Alston." *See Alston v. Creditors Interchange Receivable Management, LLC*, No. DKC 12-1709, 2012 WL 4370124, at *1 (D. Md. Sept. 21, 2012).

Trans Union argues that Counts III and V were frivolous and brought without any evidentiary support and, as a result, all of Alston's filings were made in bad faith. The Court will evaluate Alston's pleading and motions filed in this action to determine if such filings were made in bad faith, but in doing so the Court will not ignore the obvious— the Alston family is engaged in, and profiting from, "an enterprise of [FCRA] litigation." *Id.*; *see also Alston v. Experian Information Solutions, Inc.*, No. PJM 15-3558, 2016 WL 4555056, at *7, n. 5 (D. Md. Aug. 31, 2016) (noting that an "extraordinary number of FCRA cases have been filed in this Court by allegedly *pro se* 'Alston' plaintiffs" and listing cases). The Court will evaluate Alston's pleading and motions in turn.[3]

---

[3] Trans Union moves for attorneys' fees under both the FCRA and the inherent powers of the Court. *See* ECF No. 81. However, the analysis under either approach is essentially the same, and the imposition of sanctions under both would be duplicative. *See Nasser v. WhitePages, Inc.*, No. 5:12-CV-00097, 2014 WL 1323170, at *6 (W.D. Va. Apr. 1, 2014) (quoting *Strag v. Bd. of Trustees, Craven Community College*, 55 F.3d 943, 955 (4th Cir. 1995) ("A court may invoke its inherent powers to assess attorney fees against a party . . . 'where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'")).

### A. Initial and Amended Complaint

The Court does not find that Alston brought Counts III and V against Trans Union in bad faith. As Trans Union points out, Alston provided no evidentiary support for her allegation in Count III that Midland accessed her credit report without a permissible purpose, or that Trans Union's procedures were inadequate to ensure that neither Midland, nor any other debt collector, could obtain Alston's credit file for an impermissible purpose. *See* ECF No. 81 at 6. But Trans Union conflates Alston failing to set forth evidence in support of the allegations in her Complaint with Alston bringing a claim that she knew to be false. *See Lewis v. Trans Union LLC*, No. 04-6550, 2006 WL 2861059, at *4 (N.D. Ill. Sept. 29, 2006) (awarding attorney's fees pursuant to § 1681n(c) where plaintiff knowingly used multiple personalities to obtain various credit services and therefore "knew of the falsity and baselessness of allegations in the complaint when it was filed"). The Court previously found that, as alleged, Alston's claims were plausible and allowed the parties to proceed to discovery for that reason. *See* ECF No. 50. Trans Union does not provide any support for its argument that Alston knew the claims were baseless or false when filed, and the Court will not find that because Alston failed to diligently pursue her claim, it was brought in bad faith. Summary judgment in Trans Union's favor, not an award of attorneys' fees, is the appropriate result for her litigation failures.

Next, Trans Union argues that Alston brought Count V knowing that her claim against Trans Union was an impermissible collateral attack on her legal dispute with BB&T. ECF No. 81 at 4. While Alston's claim failed for this reason, Trans Union has not established that Alston knew the claim was clearly prohibited by law and objectively baseless.[4] In dismissing the claim,

---
[4] Trans Union provides correspondence from Alston in which she informs Trans Union that "[l]egally, BB&T cannot assess interest after I have tendered payment in full." *See* ECF No. 85-1. However, the mere fact that Alston knew she had a legal dispute with BB&T does not suggest that she knew that any related claim brought against Trans Union was wholly without merit.

the Court stated that "multiple courts have explained that a CRA has no obligation to resolve disputes between a consumer and a creditor," but did not state that such a proposition was a clearly established prohibition that would otherwise bar Count V in the Fourth Circuit. *See Alston*, No. GJH-15-3100, 2016 WL 4521651, at *10 (citing cases from the First Circuit, Ninth Circuit, and Western District of Wisconsin); *see also id.* (citing *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008) ("Claims brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not party to the suit. . . .")). Therefore, because there is no Fourth Circuit precedent that clearly bars a plaintiff from bringing suit against a CRA based on an underlying legal dispute between the plaintiff and a creditor such that Alston's claim herein was obviously futile, the Court cannot find that such a claim was made in bad faith. *See Sipe v. Equifax Information Services, LLC*, No. 3:16-6103, 2017 WL 253157, at * 8 (S.D. W. Va. Jan. 20, 2017) (no finding of bad faith when there was no binding Fourth Circuit precedent affirmatively foreclosing plaintiff's legal theory).[5]

### B. Motion to Alter or Amend

Trans Union argues that Alston's untimely and procedurally improper Motion to Alter or Amend, ECF No. 67, "was merely a meritless litigation tactic employed by serial filer Plaintiff in an attempt to re-argue the Court's well-reasoned Opinion." ECF No. 81 at 7. In response, Alston alleges she mistakenly presumed that she was permitted to file the motion based on the October 11, 2016 scheduling call with the Court. *See* ECF No. 84 at 11. While there is no transcript of the scheduling call, Alston's claim of mistake is dubious. The Court's scheduling order, issued

---

[5] Trans Union further argues that Alston was aware of precedent in the District of Maryland foreclosing her claim and that her Complaint contained similar factual and legal allegations as complaints filed by other members of her family. *See* ECF No. 81 at 4, n.2 (citing *Jianqing Wu v. Trans Union*, No. AW-03-1290, 2006 WL 4729755, at *6 (D. Md. May 2, 2006)). However, neither of these arguments shows that Alston brought Count V in bad faith. First, even if *Jianqing* clearly barred her claim, such a holding from this Court is not binding precedent. Second, none of the Alston-family actions Trans Union cites address whether claims against a CRA related to a legal dispute on an underlying debt are impermissible collateral attacks of the debt itself.

immediately following the call, makes no mention of Alston's Motion to Alter or Amend; rather, the order set the schedule for discovery and provided a deadline for either party to file a motion for summary judgment. *See* ECF No. 62.

Additionally, as the Court noted in denying this motion, the Court had previously explained in another Alston-family litigation that a Rule 59(e) motion is not a permissible way to challenge an interlocutory order.[6] ECF No. 77 at 6-7. While the Court is not inclined to award attorneys' fees to a prevailing party simply because it was forced to respond to a procedurally-improper motion, it does appear that Alston-family plaintiffs consistently use such motions to re-litigate the merits of their unsuccessful claims. *See Candace Alston v. Equifax Information Services, LLC,* No. TDC-13-1230, slip op. at 1–2 (D. Md. Sept. 26, 2017) (ECF No. 134) (Court noting that Rule 59(e) motions are intended to seek relief when there is an intervening change in controlling law or to point to new evidence otherwise not before the court, but are not to be used to assert that the Court's prior determinations were in error); *Candace Alston v. Wells Fargo Home Mortgage*, No. TDC-13-3147, slip op. at 1–2 (D. Md. Aug. 23, 2016) (ECF No. 77) (repeating the standard for Rule 59(e) motion and denying plaintiff relief because the court's prior determinations were not errors and did not result in manifest injustice).[7]

In yet another action, Judge Chuang again reminded the Alston family that Rule 59(e) cannot be used to continue to re-litigate failed claims. *See Candace Alston v. Trans Union, LLC*, No. TDC-14-1180, slip op. at 9 (D. Md. Mar. 8, 2018) (ECF No. 179) ("[t]he Court informs [Candace] Alston that because a Rule 59(e) motion is not a prerequisite to filing an appeal, any future Rule 59(e) motions must be supported by a reasonable basis, and may not be filed in order

---

[6] Although Alston was not a party to the action before Judge Chuang, the Order was mailed to Alston's daughter, Candace Alston, at Alston's address of record.
[7] Alston was not a party in either of these actions. However, the Court will not be so obtuse as to assume that Alston, or whoever drafted her action herein, was not also involved in these actions.

9

to harass, delay, or needlessly increase the cost of litigation or sanctions may be imposed."). Judge Chuang declined to impose sanctions because he could not be certain that Candace Alston understood that she did not need to file a Rule 59(e) motion to advance her appeal and provided a warning that similar conduct in the future would result in sanctions. Because the Motion to Alter or Amend in this case was filed prior to Judge Chuang's warning, the Court will decline to make good on that warning at this juncture and will not impose fees related to this Motion, as it is not clear that the motion was made in bad faith.

### C. Motion for Summary Judgment

Finally, Trans Union seeks costs associated with filing its Motion for Summary Judgment as related to Count III, ECF No. 71, including its attempts to conduct discovery and reply to Alston's Response in Opposition. Trans Union argues that Alston abandoned her claims after filing her Motion to Alter or Amend by declining to serve her initial disclosures or respond to Trans Union's discovery requests. ECF No. 81 at 9. In response, Alston argues that she was waiting for the Court's ruling on her Motion to Alter or Amend prior to deciding if she would pursue her remaining claims. ECF No. 84 at 12. Regardless of the sincerity of Alston's justification for not participating in discovery, the FCRA only permits the award of attorneys' fees for "filings" made in bad faith. *See Ryan*, No. 99–216, 2001 WL 185182, at *6 ("The statute requires a showing that a document was *filed* in bad faith.") (emphasis in original); *see also Arutyunyan v. Cavalry Portfolio Services*, No. 12-4122 PSG (AJWx), 2013 WL 500452, at *2 (C.D. Cal. Feb. 11, 2013) (noting that attorneys' fees under FCRA may be awarded when a pleading or other document is filed in bad faith, but "may not be based on misconduct during the pendency of the action, such as the use of delay tactics or failure to communicate with opposing counsel"). The FCRA places no affirmative obligation on Alston to diligently advance her claims

10

or risk such a sanction. Therefore, the Court will not award Trans Union attorneys' fees for all costs associated with attempting discovery and filing its Motion for Summary Judgment.

However, because Alston's Opposition in Response to Trans Union's motion, ECF No. 74, was filed in bad faith, the Court will award Trans Union commensurate attorneys' fees. In her opposition, Alston wholly failed to offer any evidence in support of her claims or explain why she failed to comply with the Court's scheduling order and participate in discovery. Rather, Alston argued that the Court should reject Trans Union's motion because Trans Union violated both Local Rule 105.2(c) and the Court's scheduling order. *Id.* at 2. Her argument was clearly frivolous. Local Rule 105.2(c) governs situations in which more than one party plans to file a motion for summary judgment, which was not applicable to the instant action. Contrary to Alston's assertion, the scheduling order stated that any motion for summary judgment should be filed on or before February 11, 2017. ECF No. 62. Trans Union's motion was filed on February 10, 2017.

The reasoning for this baseless filing appears to be found in an email exchange between the parties wherein Alston originally indicates that she would not oppose Defendant's Motion for Summary Judgment, ECF No. 81-1 ("I haven't read the motion but I'm not going to oppose it. We can do a joint dismissal"). It is only after a status report submitted to the Court indicated that Trans Union was seeking attorney fees that Alston decided to continue to litigate the matter ("If you persist on requesting I pay Tran Union's attorney fees, then I will seek to file a motion to extend discovery until after the motion to alter or amend is ruled on."). To be clear, there would be nothing improper about determining in the course of settlement negotiations, for example, that if the Defendant continued to seek attorney's fees, Plaintiff would not relinquish her claim. But, here, this exchange provides context for the completely frivolous Opposition filed by Alston and

makes it clear that Alston filed the Opposition with no intent on actually contesting the motion with plausible arguments and instead filed the motion in bad faith to extend the litigation because Trans Union was insisting on its attorney fees.

### D. Fee Award

The Court will award Trans Union attorneys' fees incurred to litigate Alston's Response in Opposition to Trans Union's Motion for Summary Judgment, and Trans Union's Motion for Attorneys' Fees. In its Motion for Attorneys' Fees, Trans Union sets forth the time charged by each of its three attorneys, in quarter hour increments, for work tasks necessary to review, research, and respond to Alston's bad-faith filings. *See* ECF No. 81 at 11–16. While Trans Union states that it has spent a total of 186.75 hours on this case, at a total cost of $32,821.22, the Court will only consider Trans Union fees associated Alston's with bad-faith filings, which the Court calculates as $6,634.56.[8]

In deciding whether an attorney's fee is reasonable, the Court must consider the twelve factors that the Fourth Circuit Court of Appeals set forth in *Barber v. Kimbrell's Inc.* to the extent such factors are applicable. *See Letren*, No. PX 15-3361, 2017 WL 4098743, at *8 (citing *Barber*, 577 F.2d 216 (4th Cir. 1978).[9] While Alston disputes that Trans Union is entitled to attorneys' fees, she has not objected to the reasonableness of the hours and rates underlying

---

[8] The fee award of $6,634.56 represents 37.75 hours at $175.75/hour. The Court awards attorneys' fees for the line items in Trans Union's Motion starting with the following captions: Reviewing Plaintiff's Cross Motion for Summary Judgement (4.75 hours); Researching Plaintiff's procedural argument (4 hours); Drafting and Revising Trans Union's Reply (8.25 hours); Reviewing Court's Order and Memorandum Opinion Granting Trans Union's Motion for Summary Judgment (6.75 hours); Research statutory provisions and case law related to Plaintiff's bad faith filings (5 hours); Drafting and Revising Trans Union's Bill of Cost, Motion for Sanctions Memorandum (9 hours). Trans Union states that all three attorneys billed Trans Union at an hourly rate of $175.75/hour, with each attorney having either 6, 7, or 35 years of experience. *Id.* at 11.

[9] These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber*, 577 F.2d at n.28.

Trans Union's request. Trans Union's fee request complies with the requirements set forth in Appendix B to the Local Rules, including guidelines regarding hourly rates. Having reviewed the billing entries in detail, the Court finds the labor and time expended is consistent with the novelty and difficulty of the questions presented and the fees appropriately reflect the experience level of the attorneys. Thus, the Court will award $6,634.56 to Trans Union for work required as a result of Alston's bad-faith filings.

**III.   CONCLUSION**

For the foregoing reasons, Trans Union's Motion for Attorneys' Fees shall be granted, in part, and Trans Union shall be awarded attorneys' fees in the amount of $6,634.56. A separate Order follows.

Dated: September 20, 2018                                  /s/
                                                    GEORGE J. HAZEL
                                                    United States District Judge